# NORTH CAROLINA RAILROAD COMPANY *v.* ZACHARY, ADMINISTRATOR OF BURGESS.

## ERROR TO THE SUPREME COURT OF THE STATE OF NORTH CAROLINA.

No. 144.  Argued December 17, 18, 1913.—Decided February 2, 1914.

In order to bring a case within the terms of the Federal Employers' Liability Act of 1908, the defendant must have been, at the time of the occurrence, engaged as a common carrier in interstate commerce and the injured employé must have been employed by such carrier in such commerce.

Where the defendant is a common carrier engaged in interstate commerce and the employé for whose injuries the suit is brought was employed by the defendant in such commerce, the Federal Employers' Liability Act of 1908 governs to the exclusion of the state statutes.

Where the state court improperly refuses to apply the provisions of the Federal Employers' Liability Act in an action for injuries to an employé of a common carrier while both employer and employé were engaged in interstate commerce and the result might have been different, the judgment must be reversed.

The persons related to the deceased employé as specified in the Employers' Liability Act of 1908 are the beneficiaries of an action prescribed by the act and the damages are to be based upon the pecuniary loss sustained by such beneficiaries.

Whether the question of employment by the deceased employé in interstate commerce was properly raised in the state court as a bar to the action in accordance with the local code, is a question of state practice, and if the highest court of the State assumed or decided that the record presented that question and decided it against the party asserting it, this court has jurisdiction to review the judgment under § 237, Judicial Code.

A railroad company, leasing its entire line, which is wholly intrastate, to another railroad company doing an interstate business creates the latter its agent and becomes a common carrier by railroad engaged in interstate commerce; and if under the local law the lessor remains responsible for the lessee's acts, the Employers' Liability Act of 1908

controls as to liability for injuries to employés of the lessee engaged in interstate commerce.

Where, upon the evidence, any essential matter bearing on the question of whether an employé of a railroad company was, at the time of the injury, engaged in interstate commerce is in doubt, it should be submitted to the jury under proper instructions.

Where the state court refused to submit questions to the jury on the ground that there was no evidence to sustain the Federal right asserted, this court will analyze the evidence to the extent necessary to give plaintiff in error the benefit of such Federal right if it was improperly denied. *Southern Pacific Co.* v. *Schuyler*, 227 U. S. 601.

When a freight train for an intrastate point is being made up of cars including some from a train which started from another State, it is a reasonable inference that such cars were being carried forward as a part of a through movement of interstate commerce.

Hauling empty cars from one State to another is interstate commerce within the meaning of the Employers' Liability Act of 1908.

The Employers' Liability Act is *in pari materia* with the Safety Appliance Act, and this court, following its rulings in regard to the latter, holds that the hauling of empty cars from one State to another is interstate commerce within the meaning of the act. *Johnson* v. *Southern Pacific Co.*, 146 U. S. 1.

Acts of an employé in preparing an engine for a trip to move freight in interstate commerce, although done prior to the actual coupling up of the interstate cars, are acts done while engaged in interstate commerce.

Although absent temporarily from his train for a short time for a purpose not inconsistent with his duty to his employer, a railroad employé may still be on duty and engaged in interstate commerce within the meaning of the Employers' Liability Act of 1908.

156 Nor. Car. 496, reversed.

THE facts, which involve the construction of the Employers' Liability Act of 1908 and its application to employés engaged in hauling interstate cars between intrastate points, and also to the owner of an intrastate railroad which it has leased to a common carrier engaged in interstate commerce, are stated in the opinion.

*Mr. John K. Graves* for plaintiff in error:

As the Federal act applies, the judgment must be re-

versed as the record discloses neither allegation nor proof of the existence of any beneficiary or beneficiaries designated in the Federal act. *Mich. Cent. R. R. Co.* v. *Vreeland,* 227 U. S. 59; *Gulf &c. Ry. Co.* v. *McGinnis,* 228 U. S. 173.

The testimony clearly shows that the cars were in the course of a through interstate journey and were therefore employed in interstate commerce regardless of whether they were loaded or empty. *Johnson* v. *Southern Pac. Co.,* 196 U. S. 1, 21; *Nor. Pac. Ry. Co.* v. *Maerkl,* 198 Fed. Rep. 1; *Pedersen* v. *Del., L. & W. R. Co.,* 229 U. S. 146.

The preparation of the engine was an interstate service and the fireman while engaged in that service was employed in interstate commerce. *Pedersen* v. *Del., L. & W. R. Co.,* 229 U. S. 146.

For other cases where the act was applied, see *St. Louis &c. Ry. Co.* v. *Seale,* 229 U. S. 156; *Neil* v. *Idaho &c. R. Co.* (Idaho), 125 Pac. Rep. 331, 336; *Horton* v. *Oregon &c. Co.* (Wash.), 130 Pac. Rep. 897; *Freeman* v. *Powell* (Texas), 144 S. W. Rep. 1033; *Montgomery* v. *Southern Pac. Co.* (Oregon), 131 Pac. Rep. 507; *Kansas City &c. Ry. Co.* v. *Pope* (Texas), 152 S. W. Rep. 185.

The pleadings establish the status of the deceased as employed in his duties as fireman at the time of the accident, especially when it is observed that the action is brought and sought to be maintained under the so-called Fellow-servant Act of North Carolina (§ 2646, Nor. Car. Revisal, 1908), which provides for the recovery of damages by an employé of any railroad injured or killed in the course of his services or employment, etc.

Nothing in the evidence tends in any way to throw a different light upon the status of the deceased at the time of the accident. If deceased was on duty at the time of the accident such duty must be assigned to his employment as fireman on an engine which was being prepared for a

movement in interstate commerce. *Second Employers'
Liability Cases*, 223 U. S. 1.

The deceased's status as a servant on duty having been
established, this status had not been broken nor had it
ceased. *Missouri &c. R. Co.* v. *United States*, 231 U. S.
112; *Kitchenham* v. *S. S. Johannesburg*, L. R. App. Cases,
1911, p. 417; *Philadelphia. &c. R. Co.* v. *Tucker*, 35 App.
D. C. 123; *Ewald* v. *Chicago &c. R. Co.*, 70 Wisconsin, 420;
*Boldt* v. *New York &c. R. Co.*, 18 N. Y. 432; *United States*
v. *Chicago &c. Ry. Co.*, 197 Fed. Rep. 624. See also to the
same effect: *United States* v. *Atchison. &c. R. Co.*, 220
U. S. 37; *United States* v. *Denver &c. R. Co.*, 197 Fed. Rep.
629; *United States* v. *Kansas City Ry. Co.*, 189 Fed. Rep.
471; *United States* v. *St. Louis &c. R. Co.*, 189 Fed. Rep.
954.

The situation is not affected by the fact that the lessor
and not the lessee who was operating the railroad is sued.

In enacting the Employers' Liability Act of 1908, Con-
gress undertook to cover the relation of master and serv-
ant with respect to injuries or death suffered by the
servant in railroad service when the master and the serv-
ant were engaged in interstate commerce. Congress in-
tended to go to the limit of its constitutional power as to
every one in fact occupying the position or relation of
master with respect to injuries to servants employed in
interstate commerce on railroads engaging in interstate
commerce. *Colasurdo* v. *Central R. R. Co.*, 180 Fed. Rep.
832.

This case falls within the scope of the act.

Even assuming that the state court was correct in its
suggestion that the plaintiff in error was not itself engaged
in interstate commerce if § 1 only of the Federal act is
considered, under § 7 the term "common carrier" includes
the receiver or receivers or other persons or corporations
charged with the duty of the management and operation of
the business of a common carrier, and this includes as

lessor the plaintiff in error. *Logan* v. *North Carolina R. Co.,* 116 Nor. Car. 941.

The Federal Employers' Liability Act applies to the cause of action presented in this case to the exclusion of the state law.

*Mr. Thomas H. Calvert,* with whom *Mr. John A. Barringer* and *Mr. George S. Bradshaw* were on the brief, for defendant in error:

The North Carolina Railroad Co. is not a common carrier by railroad while engaging in commerce between any of the several States. Its tracks and property lie wholly within the State of North Carolina. It is in existence, has its officers and directors, receives its annual rents from its lessee, the Southern Railway Company, and distributes them among its stockholders; but it is not an interstate carrier within the meaning of the Federal Employers' Liability Act. While *Logan* v. *Railroad Co.,* 116 Nor. Car. 941, has held that this lessor is responsible for all acts of negligence of its lessee, that is because a railroad corporation cannot escape its responsibility by leasing its road.

Plaintiff in error had the right and the opportunity to make its lessee, the Southern Railway Company, a party defendant.

On the pleadings, if there had been any evidence tending to show that the deceased was engaged in interstate service, it would have been the province of the jury to determine that fact.

Under § 527, Revisal of Nor. Car. of 1905, and following the well-recognized practice in this State, it has been held in many cases that where the evidence is conflicting, or different inferences may properly be drawn from the testimony, it is the duty of the trial judge to submit the questions of fact to the jury. *Marks* v. *Cotton Mills,* 138 Nor. Car. 401; *Ramsbottom* v. *Railroad Co.,* 138 Nor. Car. 38; *Stewart* v. *Railroad Co.,* 137 Nor. Car. 687.

And it is for the jury to pass upon the credibility which should be given to the testimony of a witness. *Manufacturing Co.* v. *Railroad Co.*, 128 Nor. Car. 285; *Halton* v. *Railroad Co.*, 127 Nor. Car. 255; *Cox* v. *Railroad Co.*, 123 Nor. Car. 604. See also *Bolden* v. *Railroad Co.*, 123 Nor. Car. 614; *Simonton* v. *Winter*, 5 Pet. 141.

There was not sufficient evidence to submit to the jury the question whether or not the deceased was engaged in interstate commerce.

As the plaintiff in error raised the question in the answer whether or not the deceased, at the time he was killed, was engaged in interstate commerce, it devolved upon it to show clearly that the deceased was so engaged.

At the time he was killed the deceased had left the engine and was going across the main line and the tracks in the yard toward his boarding-house.

His service at the time of his death would not be changed to an interstate service by evidence that subsequently interstate freight was put on the train.

As to why the original act of 1906 was held to be invalid, see *Employers' Liability Cases*, 207 U. S. 463.

It is not sufficient that the employé should at times have been engaged in interstate commerce, but the act of 1908 particularly declares that the injury or death must have been caused while he was employed by such carrier in such commerce.

The prayers for instruction, being predicated on a state of facts upon which there was not sufficient evidence to submit the question to the jury, were properly refused. *Stewart* v. *Carpet Co.*, 138 Nor. Car. 60; *Stewart* v. *Railroad Co.*, 136 Nor. Car. 385; *Bryan* v. *Railroad Co.*, 134 Nor. Car. 538; *Joines* v. *Johnson*, 133 Nor. Car. 487; *Trust Co.* v. *Benbow*, 131 Nor. Car. 413; *Burton* v. *Mfg. Co.*, 132 Nor. Car. 17; *Carson* v. *Railroad Co.*, 128 Nor. Car. 95.

If the plaintiff desired to insist on its further defense that the deceased was engaged in interstate commerce,

it was its duty to tender an issue on which that fact could
properly be inquired into. Code of Civ. Proc., Revisal of
1905, §§ 545, 546. And see also Revisal of 1905, §§ 503,
548, as construed in *Manufacturing Co.* v. *Cloer*, 140 Nor.
Car. 128; *Pollock* v. *Warwick*, 104 Nor. Car. 638; *Mining
Co.* v. *Smelting Co.*, 99 Nor. Car. 445; *Oakley* v. *Van
Noppen*, 95 Nor. Car. 60; *Simmons* v. *Mann*, 92 Nor. Car.
12; *Piedmont Wagon Co.* v. *Byrd*, 119 Nor. Car. 460;
*Womble* v. *Grocery Co.*, 135 Nor. Car. 474; *Walker* v.
*Scott*, 106 Nor. Car. 56; *Baltimore &c. R. Co.* v. *Darr*, 204
Fed. Rep. 751.

MR. JUSTICE PITNEY delivered the opinion of the court.

This action was brought in the Superior Court of Guilford
County, North Carolina, to recover damages for the negli-
gent killing of Burgess, a locomotive fireman in the employ
of the Southern Railway Company, lessee of the defend-
ant, which occurred at Selma, North Carolina, on April 29,
1909. Under the local law, as laid down in *Logan* v.
*Railroad*, 116 Nor. Car. 940, the lessor is responsible
for all acts of negligence of its lessee occurring in the con-
duct of business upon the lessor's road; and this upon the
ground that a railroad corporation cannot evade its public
duty and responsibility by leasing its road to another
corporation, in the absence of a statute expressly exempt-
ing it. The responsibility is held to extend to employés of
the lessee, injured through the negligence of the latter.

The complaint set forth in substance that plaintiff's
intestate, being in the employ of defendant's lessee, and
engaged at the Selma switchyards in the discharge of his
duties as fireman upon Engine No. 862, about eight
o'clock, p. m., on the date mentioned, after inspecting,
oiling, firing, and preparing the engine for starting on a
trip from Selma to Spencer, N. C., attempted to cross cer-
tain tracks that intervened between the engine and his

boarding-house, which was located a short distance away; that another engine, No. 716, was standing upon a side-track in such position as to shut off intestate's view of the main track; that No. 716 had its blower on, and was making a noise so loud that intestate could not hear a third engine—No. 1551, the shifting engine used in the yards—which at this time was running backward at a reckless and dangerous rate of speed, without headlight and without an adequate and competent crew; and that as intestate stepped from the track in the rear of Engine No. 716 and was about to step upon the main line in the attempt to cross it, he was struck and killed by the shifting engine. Defendant's answer, besides denying the allegations of negligence, set up as a special defense that at the time plaintiff's intestate was killed, he was engaged in interstate commerce as an employé upon a train of defendant's lessee which was moving from Selma, North Carolina, to Spencer, in the same State, and carrying cars loaded with freight from the State of Virginia to the State of North Carolina and other States; that the liability of the defendant to him or to the plaintiff as his representative was fixed and regulated by the Federal Employers' Liability Act of April 22, 1908; and that under that act the plaintiff was not entitled to recover.

Upon the trial, at the close of plaintiff's evidence, which tended generally to support the averments of the complaint, defendant moved for a non-suit, and among other grounds assigned the following:—that from the uncontradicted evidence it appeared that at the time of the occurrence in question defendant, through its lessee, was a common carrier by railroad engaged in interstate commerce, and plaintiff's intestate was at that time a person employed by such carrier in such commerce; that the act of Congress already referred to exclusively regulated the liability of defendant to plaintiff's intestate, and that upon all the evidence plaintiff had failed to make out a

case of liability under that act. The court, in denying the motion, held that the action was brought under the statute of North Carolina, that the Federal act had no application, and that the cause was triable under the statutes of the State. To this ruling, defendant excepted. At the close of the case, defendant again undertook to invoke the protection of the Federal act by requested instructions to the jury, which were refused and exceptions allowed.

There was a verdict for plaintiff and judgment thereon, followed by an appeal to the Supreme Court of the State. That court overruled the contention of defendant that the Federal Employers' Liability Act of April 22, 1908, applied, and held that the action was properly tried under the state law. The result was an affirmance, 156 Nor. Car. 496, and the case comes here under § 709 Rev. Stat. (Jud. Code, § 237).

In order to bring the case within the terms of the Federal act (35 Stat. 65, c. 149, printed in full in 223 U. S., p. 6), defendant must have been, at the time of the occurrence in question, engaged as a common carrier in interstate commerce, and plaintiff's intestate must have been employed by said carrier in such commerce. If these facts appeared, the Federal act governed, to the exclusion of the statutes of the State. *Second Employers' Liability Cases (Mondou v. New York &c. Railroad Co.)*, 223 U. S. 1, 55; *St. Louis & San Francisco Ry. v. Seale*, 229 U. S. 156, 158.

It is not disputed that if the provisions of the Federal act had been applied, the result of the action might have been different. To mention only one matter: there was neither averment in the pleadings nor evidence at the trial that deceased left a widow, child, parent, or dependent next of kin. Persons thus related to deceased are the respective beneficiaries of the action prescribed by the act of Congress, and the damages are to be based upon the

pecuniary loss sustained by the beneficiary. *Michigan Central R. R.* v. *Vreeland,* 227 U. S. 59, 68; *Gulf, Colorado &c. Ry. Co.* v. *McGinnis,* 228 U. S. 173. The state law (Revisal 1908, § 2646) seems not to recognize this limitation upon the measure of recovery; certainly the damages in the present case were assessed without regard to it.

In support of the judgment, it is earnestly argued that the question whether deceased was employed in interstate commerce was not properly raised in the trial court in accordance with the pertinent provisions of the local Code of Civil Procedure. But this is a question of state practice; and since it appears that defendant expressly claimed immunity by reason of the act of Congress, and the highest court of the State either decided or assumed that the record sufficiently presented a question of Federal right and decided against the party asserting that right, the decisions of this court render it clear that it is our duty to pass upon the merits of the Federal question. *Home for Incurables* v. *City of New York,* 187 U. S. 155, 157; *Land & Water Co.* v. *San Jose Ranch Co.,* 189 U. S. 177, 179; *Haire* v. *Rice,* 204 U. S. 291, 299; *Chambers* v. *Balt. & Ohio R. R.,* 207 U. S. 142, 148; *Miedreich* v. *Lauenstein,* decided this day, *ante,* p. 236.

The court based its decision that the Federal act did not apply, in part upon the ground that the North Carolina Railroad is not an interstate railroad—its tracks and property lying wholly within the State—and that the corporation itself is not, although its lessee is, engaged in interstate commerce; the lessor's activities being confined to receiving annual rents and distributing them among its stockholders. The responsibility of the lessor for all acts of negligence of the lessee occurring in the conduct of business on the lessor's road, as established by the same court in *Logan* v. *Railroad,* 116 Nor. Car. 940, was recognized—indeed reasserted. "But," it was said, "that is because a railroad corporation cannot escape its respon-

sibility by leasing its road. It is still liable for its lessee's acts of commission and omission, whether they occur in interstate or intrastate commerce, although the lessor is not actually engaged in either." 156 Nor. Car. 500.

It is plain enough, however, that the effect of the rule thus laid down, especially in view of the grounds upon which it is based, is, that although a railroad lease as between the parties may have the force and effect of an ordinary lease, yet with respect to the railroad operations conducted under it, and everything that relates to the performance of the public duties assumed by the lessor under its charter, such a lease—certainly so far as concerns the rights of third parties, including employés as well as patrons—constitutes the lessee the lessor's substitute or agent, so that for whatever the lessee does or fails to do, whether in interstate or in intrastate commerce, the lessor is responsible. This being the legal situation under the local law, it seems to us that it must and does result, in the case before us, that the lessor is a "common carrier by railroad engaging in commerce between the States," and that the deceased was "employed by such carrier in such commerce," within the meaning of the Federal act; provided, of course, he was employed by the lessee in such commerce at the time he was killed.

It was, however, further held by the Supreme Court of North Carolina that deceased, at the time he was killed, was not in fact employed by the Southern Railway, the lessee, in interstate commerce. There are several grounds upon which this decision was based, or upon which it is said to be supportable; and these will be separately noticed. Of course, if upon the evidence any essential matter of fact was in doubt, it should have been submitted to the jury under proper instructions. The rulings of the trial court deprived plaintiff in error of the opportunity to go to the jury upon the question. But it is now insisted that there was no evidence tending to show that

deceased was engaged in interstate commerce. This renders it incumbent upon us to analyze the evidence to the extent necessary to give to plaintiff in error the benefit of its asserted Federal right. *Southern Pacific Co.* v. *Schuyler*, 227 U. S. 601, 611, and cases cited.

The evidence tended to show that Train No. 72 of the Southern Railway had come in to Selma, N. C., from Pinners Point, Va., and other places, and that a shifting crew was "working" this train so as to take two cars from it and put them into a train that was to include these and other cars to be hauled from Selma to Spencer, N. C., by Engine No. 862, and that deceased was employed on this engine as fireman for the trip that was about to begin, and had already prepared his engine for the purpose. It is contended that the evidence failed to show that the two cars thus taken from Train No. 72 had come in from Virginia, rather than from the "other places," which it is said might be intermediate North Carolina points. We find, however, evidence that the train which was to be hauled from Selma to Spencer by Engine No. 862, was being made up in part from cars that had come in from Pinners Point; and it was at least a reasonable inference that the two cars referred to were being put into the Spencer train in order to be carried forward as a part of a through movement of interstate commerce.

There seems to be no clear evidence as to the contents of these cars, and it is argued that, in the absence of evidence, it is as reasonable to infer that they were empty as that they were loaded; and that it was incumbent upon defendant to show that they contained interstate freight. We hardly deem it so probable that empty freight cars would be hauled from the Virginia point to Spencer. But were it so, the hauling of empty cars from one State to another is, in our opinion, interstate commerce within the meaning of the act. Such is the view that has obtained with respect to empty cars in actions based upon the

Safety Appliance Act of March 2, 1893 (27 Stat. 531, c. 196). *Johnson* v. *Southern Pacific Co.*, 196 U. S. 1, 21; *Voelker* v. *Railway Co.*, 116 Fed. Rep. 867, 873. And the like reason applies, as we think, to actions founded upon the Employers' Liability Act, which, indeed, is *in pari materia* with the other.

It is argued that because, so far as appears, deceased had not previously participated in any movement of interstate freight, and the through cars had not as yet been attached to his engine, his employment in interstate commerce was still *in futuro*. It seems to us, however, that his acts in inspecting, oiling, firing, and preparing his engine for the trip to Selma were acts performed as a part of interstate commerce, and the circumstance that the interstate freight cars had not as yet been coupled up is legally insignificant. See *Pederson* v. *Del., Lack. & Western R. Co.*, 229 U. S. 146, 151; *St. Louis & San Francisco Ry.* v. *Seale*, 229 U. S. 156, 161.

Again, it is said that because deceased had left his engine and was going to his boarding-house, he was engaged upon a personal errand, and not upon the carrier's business. Assuming (what is not clear) that the evidence fairly tended to indicate the boarding-house as his destination, it nevertheless also appears that deceased was shortly to depart upon his run, having just prepared his engine for the purpose, and that he had not gone beyond the limits of the railroad yard when he was struck. There is nothing to indicate that this brief visit to the boarding-house was at all out of the ordinary, or was inconsistent with his duty to his employer. It seems to us clear that the man was still "on duty," and employed in commerce, notwithstanding his temporary absence from the locomotive engine. See *Missouri, Kansas & Texas Ry. Co.* v. *United States*, 231 U. S. 112, 119.

We conclude that with respect to the facts necessary to bring the case within the Federal act, there was evi-

dence that at least was sufficient to go to the jury. It is doubtful whether there was substantial contradiction respecting any of these facts; but this we need not consider.

From what has been said, it follows that the state courts erred in holding that the Federal act had no application. As the case stands, we are not called upon to determine the validity of the several contentions that were raised by defendant at the trial on the strength of that act, nor to pass upon the mode in which they were raised. Upon these matters, therefore, we express no opinion.

*Judgment reversed, and the cause remanded for further proceedings not inconsistent with this opinion.*