Salmon v. Southern Ry. Co.

C. ALLICE SALMON v. SOUTHERN RAILWAY COMPANY.*

(*Knoxville.* September Term, 1915).

1. COMMERCE. Injury to servant engaged in superintendence.

A railroad employee at the shop of defendant railway, an inter-
state carrier, where it built and repaired cars used by intra-
state and interstate commerce, and which at times were in no
service at all, and where it painted its cars, the paint for
which was brought in large quantities to its freight depot two
miles from the shop, whence, after a carload had accumulated,
it was hauled out to the shops, and the paint placed in a store-
house to be drawn for use, who had the superintendence of
the unloading of the paint from the car, but nothing to do with
its use, and who, among his general duties, looked after the
issuance of the iron from the iron house to the various shops in
the yard and superintended the unloading of iron and issuing
it or pointing it out when called for, and who, after directing
a number of men how to unload a car of paint, turned his
back and was talking to another person about the iron when
he was struck and fatally injured by a barrel of paint which
slipped from the skid by reason of workman's negligence, was
then engaged in superintending the unloading so far as that
was interstate commerce. (*Post, pp.* 228, 229.)

2. COMMERCE. Employers' liability act. Railroad employee.
"Interstate commerce."

Such employee, while directing the unloading of barrels of paint
from the car, or while standing near talking with another
person about a pile of iron, also within the scope of his duties,
was not doing any act or duty having important connection
with interstate commerce, and hence was not "engaged in
interstate commerce" within the federal Employers' Liability
Act April 22, 1908, ch. 149, 35 Sat., 65 (U. S. Comp. St. 1913,
secs. 8657-8665), so as to entitle his widow to recover for his

*On the constitutionality, application and effect of Federal Em-
ployers' Liability Act see notes in 47 L. R. A. (N. S.), 38; L. R. A.,
1915, ch. 47.

Salmon v. Southern Ry. Co.

death from the negligence of his fellow servants. (*Post, pp.* 229-237.)

Cases cited and distinguished: North Carolina R. Co. v. Zachary, 232 U. S., 248; Pedersen v. Delaware, etc., R. Co., 229 U. S., 146; St. Louis, S. F. & T. R. Co. v. Seale, 229 U. S., 156; North Carolina R. Co. v. Zachary, 232 U. S., 248; Illinois Central R. Co. v. Behrens, 233 U. S., 473; New York Cent. & Hudson R. Co. v. Carr, 238 U. S., 260; Illinois Cent. R. Co. v. Rogers, 221 Fed., 52.

---

FROM KNOX.

---

Appeal from the Circuit Court of Knox County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.— VON A. HUFFAKER, Judge.

GREEN, WEBB & TATE, for plaintiff.

L. D. SMITH and ROSCOE WORD, for defendant.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

This action was brought to recover damages for an injury alleged to have been inflicted by the railway company upon plaintiff's husband, whereby the latter died. Originally there were three counts in the declaration, but only the first was relied upon.

This count alleges, in substance, that defendant railway company was engaged in interstate commerce, and while so engaged, and while her husband was em-

ployed in such interstate commerce, as a servant of the defendant, he was injured through the negligence of his coemployees in the following manner: A car loaded with barrels of paint, or oil, was in course of unloading, the method being that the barrels were slid down a skid to the ground, two employees of the company being in the car and two on the ground, the business of the latter being to conduct the barrels safely to the ground, but by reason of their negligence the barrel turned and took the wrong direction, rolling rapidly to the ground and striking the deceased, by means of which act the injury was produced; that plaintiff's husband was directing the said employees, and had given proper instructions, but these were not complied with; that such direction was a part of deceased's duty, and it was also a part of his duty to have chargé of the iron house and distribute the iron to the various parts of the system at Knoxville, to be used in the repair of cars.

The railway company filed a plea of not guilty, and, at the close of plaintiff's evidence, moved for a peremptory instruction. This was given by the trial judge. On appeal to the court of civil appeals that court affirmed the action of the trial judge, and the case is now before us under a petition for *certiorari*, and has been argued both orally and in writing.

It is insisted, in support of the motion for peremptory instructions, that there is no evidence that plaintiff's husband died because of the injury complained of; likewise, that there is no evidence of negligence on

133 Tenn. 15

the part of the coemployees of the deceased. We deem it unnecessary in this opinion to go into the particulars of this matter, inasmuch as our views were stated orally in the presence of counsel on both sides when the cause was decided. The view entertained by the court, and so stated, was that there was enough evidence on these two subjects to take the case to the jury, in the event the court should be of the opinion that the facts brought it within the federal Employers' Liability Act. We are of the opinion, however, that the judgment of the court of civil appeals must be affirmed on the ground that the facts did not make a case under that act. They are, in substance, as follows:

The Southern Railway Company is an interstate carrier, and maintains shops near Knoxville, Tennessee, called the "Coster Shops." At these shops, among other things, it builds and repairs cars which it uses both in intrastate and interstate commerce, and which at times are in no service at all. It uses paint at these shops in painting cars, houses, and buildings, but practically all of the paint is used on cars. The paint which it uses is bought in large quantities, and usually comes to the freight depot of the company about two miles from the shops, where it is accumulated until there is a carload; then the barrels of paint are loaded into a car and hauled out to the shops, where the car is unloaded and the paint placed in a storehouse, and from this storehouse the supply is drawn upon when needed in connection with the painting of cars, or buildings, or whatever use it may be put to.

Salmon v. Southern Ry. Co.

The evidence with respect to this particular barrel of paint does not show where it came from, or where it was to be placed, or what use it was to be put to. It is only inferable from the custom of the company with respect to paint generally that the particular barrel of paint which inflicted the injury would eventually be drawn upon for use in painting cars, buildings, etc.

Assuming that this particular barrel of paint, with the other barrels contained in the car, was handled in the usual and customary way, we may conclude that it was hauled from the depot at Knoxville out to the Coster Yards, where it was being unloaded, not for any particular use at that particular time, but for the purpose of being stored in the storehouse, from which subsequently a supply of paint necessary to be used in the shops would be drawn. There is no evidence from which it can be inferred that this particular barrel of paint was being devoted to any use at the time. We can only assume from the custom that the expectation was that it, at some future time, after it had gone into the storehouse, would be drawn upon for supplies. The connection of deceased with these transactions was to superintend the unloading of the paint from the car. He had nothing whatever to do with the using of the paint.

Among the general duties which the deceased had to perform was that of looking after the issuance of the iron from the iron racks in the iron house to the various shops in the yards; superintending the unloading of the iron; seeing that it was unloaded at the

proper place, and placed properly in the racks, and issuing this iron, or pointing it out to the men working in the shops when it was called for. At the time the barrel of paint rolled down the skids and struck the deceased he had his back to the employees who were engaged in unloading the paint, was standing off some distance, looking at the pile of iron, and talking about it to some man whose name is not stated.

When this barrel of paint arrived at the yards, and had to be unloaded in order to be placed in the storehouse, the deceased called upon Mr. Reed, foreman of the scrap pile, to furnish him with four men to unload the car. Four negro laborers were furnished. They reported to deceased, who told them what to do and how to do it. Having done this, he turned his back in the manner stated, and was talking to the man about the iron, the latter being also, as stated, under his control and direction. It was the duty of the two employees who received the barrels from the hands of the other two in the car to conduct them safely to the ground along the surface of the skid. In order to do this it was necessary to seize the barrels firmly, but this particular barrel was, through the negligence of the two men on the ground, not firmly caught, and so escaped from their hands and ran down upon the deceased, striking him. An effort was made by one of the men on the car to save him, by calling to him, but the barrel went so rapidly, he did not have time to escape.

Two contentions are made by the railway company. The first is that at the time of the injury the deceased

was not engaged in superintending the unloading of the paint from the car, nor in any act whatever connected with the distribution of the iron; that therefore, without reference to whether that work would constitute an act in interstate commerce, he was not at the time engaged in it, and for this reason cannot recover; secondly, that the work of unloading the paint in the manner in which this was being done, or superintending the iron pile, were not acts of interstate commerce.

We do not think the first contention is sound. He was close by, and had given directions which he had a right to suppose would be followed, and the fact that he turned away for a short time to talk with some one about the iron that was likewise under his charge we do not think would deprive him of his *status* of being engaged in an act of interstate commerce, if the work of unloading the paint was such an act. In our opinion the case, with respect to the first contention, falls within the authority of *North Carolina R. Co.* v. *Zachary,* 232 U. S., 248, 34 Sup. Ct., 305, 58 L. Ed., 591, Ann. Cas., 1914C, 159. In that case it appeared that the deceased had just finished inspecting, oiling, firing, and preparing his engine for a journey, which was part of an interstate trip, and, having done this work, he left the engine, and started to his boarding house. While so doing, and before he had crossed the track, he was struck by another engine and killed. The court said that there was nothing to indicate that this attempt to visit the boarding house was at all out of the ordinary, or was inconsistent with the servant's

duty to his employer; that he was still on duty and employed in interstate commerce, notwithstanding his temporary absence from the locomotive engine. We are of the opinion, however, that the second contention of the defendant is sound, within the authority of *Pedersen* v. *Delaware, etc., R. Co.,* 229 U. S., 146, 33 Sup. Ct., 648, 57 L. Ed., 1125, Ann. Cas., 1914C, 153; *St. Louis, S. F. & T. R. Co.* v. *Seale,* 229 U. S., 156, 158, 33 Sup. Ct., 651, 57 L. Ed., 1129, 1133, Ann. Cas., 1914C, 156; *North Carolina R. Co.* v. *Zachary,* 232 U. S., 248, 256, 34 Sup. Ct., 305, 58 L. Ed., 591, 594, Ann. Cas., 1914C, 159; *Illinois Cent. R. Co.* v. *Behrens,* 233 U. S., 473, 34 Sup. Ct., 646, 58 L. Ed., 1051, 1055, Ann. Cas., 1914C, 163; *New York Cent. & Hudson R. Co.* v. *Carr,* 238 U. S., 260, 35 Sup. Ct., 780, 59 L. Ed., 1298 (year 1914); *Illinois Cent. R. Co.* v. *Rogers,* 221 Fed., 52, 136 C. C. A., 530.

The substance of these cases on the point under consideration is that there must be an immediate connection between interstate commerce and the act or duty in course of performance at the time the injury occurred. In the *Pedersen Case* the party injured and another employee, acting under the direction of the foreman, were conveying from a tool car to a bridge on an interstate railway some bolts, or rivets, which were to be used by them that night, or very early the next morning, in repairing the bridge, the repairs to consist in taking out an existing girder and inserting a new one. While on his way he was injured by a train on the same track. After pointing out that

tracks and bridges are as indispensable to interstate commerce by railroads as are engines and cars, and that these instrumentalities must be kept in repair, since the security, expedition, and efficiency of that commerce depends, in large measure, upon this being done, the court continued:

"The point is made that the plaintiff was not, at the time of his injury, engaged in removing the old girder and inserting the new one, but was merely carrying to the place where that work was to be done some of the materials to be used therein. We think there is no merit in this. It was necessary to the repair of the bridge that the materials be at hand, and the act of taking them there was a part of that work. In other words, it was a minor task which was essentially a part of the larger one, as is the case when an engineer takes his engine from the roundhouse to the track on which are the cars he is to haul in interstate commerce."

It is perceived that the connection between the act of the party injured and interstate commerce was close, since he was to use these bolts and rivets that very night, or early the next morning, in repairing the bridge. Here we have the materials devoted to a special part of one of the interstate agencies of the railway company, and a very brief time left in which the actual application was to be made.

In the *Seale Case* the facts recited in the opinion show that an interstate train had just arrived. The employee who was killed had imposed upon him the

duty of taking the numbers of the cars and othewise performing his duties in respect of them. While so engaged he was struck and fatally injured by a switch engine, which it was claimed was being negligently operated by other employees in the yard. The court said:

"In our opinion the evidence does not admit of any other view than that the case made by it was within the federal statute. The train from Oklahoma was not only an interstate train but was engaged in the movement of interstate freight, and the duty which the deceased was performing was connected with that movement, not indirectly or remotely, but directly and immediately."

In the *Zachary Case* it appeared that the one injured had been ordered to go as fireman upon an engine which was to draw a train made up to complete an interstate haul. Preparatory to this trip he got the engine ready. After doing this he started to his boarding house, but was killed by a backing engine before he had crossed the main track. In disposing of the matter the court said:

"It is argued that because, so far as appears, deceased had not previously participated in any movement of interstate freight, and the through cars had not, as yet, been attached to his engine, his employment in interstate commerce was still *in futuro*. It seems to us, however, that his acts in inspecting, oiling, firing, and preparing his engine for the trip to Selma were acts performed as a part of interstate

commerce, and the circumstances that the interstate freight cars had not, as yet, been coupled up is legally insignificant. . . . We conclude that with respect to the facts necessary to bring the case within the federal act, there was evidence that at least was sufficient to go to the jury.''

It is perceived that in this case likewise the connection was very close.

In the *Carr Case* the evidence showed that a train was hauling both intrastate and interstate cars; that two intrastate cars were next to the engine; that on arriving at a point on the journey these two cars were detached from the train, pulled by the engine down the track, and then backed into a siding. It was the duty of one brakeman, O'Brien, to uncouple the air hose from the engine, and for the other brakeman, Carr, to set the hand brakes in order to prevent the two cars from rolling down upon the main track. By O'Brien's negligent management of the air hose, the sudden escape of air violently turned the wheel handle attached to the brake which Carr at the time was attempting to set. The wrench threw Carr to the ground, producing the injuries for which he sued. The court said:

''Plaintiff was a brakeman on an interstate train. As such, it was a part of his duty to assist in the switching, backing, and uncoupling of the two cars so that they might be left on a siding in order that the interstate train might proceed on its journey. In performing this duty it was necessary to set the brake of

the car still attached to the interstate engine, so that, when uncoupled, the latter might return to the interstate train and proceed with it, with Carr and the other interstate employees, on its interstate journey.''

It is to be observed that in this case also the connection between the act by which the injury was received and interstate commerce was very close.

In *Behrens' Case,* the facts stated in the opinion of the court, so far as applicable to the present controversy, were these:

''At the time of the collision the crew was moving several cars loaded with freight which was wholly intrastate, and upon completing that movement was to have gathered up and taken to other points several other cars as a step or link in their transportation to various destinations within and without the State. The question of law upon which the circuit court of appeals desires instruction is whether upon these facts it can be said that the intestate at the time of his fatal injury was employed in interstate commerce within the meaning of the Employers' Liability Act.''

In answering the question the court said:

''At the time of the fatal injury the intestate was engaged in moving several cars, all loaded with intrastate freight, from one part of the city to another. That was not a service in interstate commerce, and so the injury and resulting death were not within the statute. That he was expecting, upon the completion of that task, to engage in another which would have been a part of interstate commerce is immaterial

under the statute, for by its terms the true test is the nature of the work being done at the time of the injury.''

In disposing of the *Carr Case*, supra, the court distinguished it from the *Behrens Case* in the following language:

''The case is entirely different from that of *Illinois Cent. R. Co.* v. *Behrens*, 233 U. S., 473, 34 Sup. Ct., 646, 58 L. Ed., 1051, Ann. Cas., 1914C, 163, for there the train of empty cars was running between two points in the same State. The fact that they might soon thereafter be used in interstate business did not affect their intrastate *status* at the time of the injury; for, if the fact that a car had been recently engaged in interstate commerce, or was expected soon to be used in such commerce, brought them within the class of interstate vehicles, the effect would be to give every car on the line that character. Each case must be decided in the light of the particular facts, with a view of determining whether, at the time of the injury, the employee is engaged in interstate business, or in an act which is so directly and immediately connected with such business as substantially to form a part or a necessary incident thereof. Under these principles the plaintiff (Carr) is to be treated as having been employed in interstate commerce at the time of his injury.''

These two cases present, in a strong light, the necessity of the close connection required between the interstate commerce and the act during the performance

of which an injury complained of may have been received.

The *Rogers Case,* decided by the circuit court of appeals for the fifth circuit, bears a very close similarity in its facts to the case now before us. There the plaintiff was employed to maintain in good order the paint houses and shops, and to take care of all the paints, oils, varnishes, and other materials owned and used in painting and repairing the cars used by the railway company in its business as a common carrier in interstate commerce. At the time the plaintiff was injured he was at work next to the entrance of the paint shop near the railroad tracks, in the act of cleaning certain stencils used by the railway company to mark the cars employed by it in its interstate business. The court held that such cleaning of stencils was not a part of interstate commerce; that a contrary holding would unduly extend the doctrine announced by the supreme court of the United States in the *Pedersen Case,* supra.

The supreme court cases we have referred to in the order of their publication seem to show a progressive tendency towards requiring a closer and closer connection with some act of interstate commerce, or with the early repairing of some interstate agency. A lax construction would soon flood the docket of the supreme court with a vast number of cases from the State supreme courts; besides as we think, unduly curtail the operation of the laws of the several States,

Salmon v. Southern Ry. Co.

as regards actions to recover damages for injury or death caused by some wrongful act.

We are referred by counsel for the plaintiff to many decisions from State courts, and from the lower federal courts, showing a far more liberal construction of the act than we have held to be the true one under the supreme court decisions. These latter decisions are controlling, and, as we think, dispose of the question most wisely.

Comparing the facts of the present controversy with the supreme court cases we have cited, it is apparent that the act of unloading the paint was not connected with interstate commerce with sufficient immediateness to bring the case within the federal act. The paint was to be used on cars, designed both for interstate and intrastate service, but how soon this use was to be made does not appear. The paint was simply stored to be used when needed. It is not shown whether any need developed within a week or a month, or at all.

On the ground stated we are of the opinion that the judgment of the court of civil appeals, sustaining the defendant's motion for a peremptory instruction in the trial court, must be affirmed.