## No. 8556.

## DENVER & RIO GRANDE RAILROAD CO. *v.* DAVELLO.

1. INTERSTATE COMMERCE—*Who Employed in.*   A section hand employed, among other duties, in inspecting and repairing the track of a railroad devoted to interestate commerce, is while so acting, engaged in interstate commerce.

2. RAILROAD COMPANY—*Negligence in Operation.*   Action for negligence occasioning the death of a trackman.

The evidence examined and held sufficient to sustain a verdict for the plaintiff.

*Error to Denver District Court, Hon. John H. Denison, Judge.*

Mr. E. N. CLARK and Mr. R. G. LUCAS, for plaintiff in error.

Mr. F. W. SANBORN and GEO. ALLAN SMITH, for defendant in error.

Garrigues, J.:

VINCENZO Plasteno was accidentally killed while employed by plaintiff in error as a section hand on its railroad.   He left, as his sole surviving heir, his mother, who was dependent upon him for support, and who at the time of the accident was a subject and resident of the kingdom of Italy.   This action was instituted on her behalf by defendant in error as administrator of the estate of the deceased.   The

jury returned a verdict of $2,000 against the company, and it brings the case here on error.

The complaint alleges substantially that defendant, a railroad corporation, is a common carrier engaged in interstate commerce; that deceased was in its service as a section hand and track repairer, and while so employed on September 21, 1912, near the station of Chester, Colo., was so badly injured by one of the trains of defendant, through its carelessness and negligence, that he died the next day. It was stipulated on the trial that defendant was, at the time stated, a common carrier by railroad, engaged in interstate commerce on its line of railroad, and at the siding or station near Chester, where deceased was injured, and is subject to the provisions of the federal Employers' Liability Act.

On defendant's narrow gauge line between Salida and Grand Junction is a station or siding called Chester. Two miles west of this, at a point called Tank 7, is a section house, used as headquarters for two section crews, one working east and the other west. From Chester easterly there is a heavy upgrade to the top of Marshall Pass. Each section foreman had power to employ and discharge section hands, who worked under his direction and control. There is evidence showing that it was the duty of the foreman to go with the men each day over his section, inspect the track, keep it in repair for train service, and remove old ties and rails, and for this work he was furnished with a push car. It was the custom of the foreman to sit on the front end of this car, which the men pushed over the track, and in this way they inspected the track and roadbed, and, upon discovering anything out of repair, would stop and fix it. September 20, 1912, the foreman received orders from the roadmaster to gather up the old rails along the track on his section and put them on a car at Chester. The next morning the foreman, with three section hands, one of whom was the deceased, started out with the push car for the purpose of inspection and gathering old rails. When they reached Chester, they had picked up four rails, and,

after placing these on a car, were intending to continue their work a mile and a half east of Chester, which would necessitate their pushing the car upgrade. About this time a heavy freight train, going east, came in, propelled by three engines, one of which was at the rear of and pushing the train. While this freight was standing on the main line, the foreman ordered his gang to fasten the push car by means of a rope to the knuckle of the drawhead on the tender of the rear engine, so that the train would pull them up the heavy grade. This was done, the foreman and the men, in obedience to his order, got on the push car, and in a few minutes the train pulled out. It appears that the freight had orders to pull in on a siding to allow a passenger train to pass. This apparently was unknown to the section men, who thought it was going to pull out, instead of which it simply went up past the switch and then began to back in on the siding. The men remained on the push car, which was in some manner derailed as the train was moving backwards, and deceased was run over by the tender and engine and fatally injured. There is no direct or positive evidence as to the immediate cause of the accident, other than this. The engineer on the rear engine testified that, when he received the order to back up and saw the men on the push car, he did not execute it until it had been repeated the third time. There was evidence that the side track was in bad condition; that it was constructed of rails of different weights, which made the track uneven; that many of the ties were rotten, and into some of them no spikes had been driven. There was also testimony to the effect that the wheels of the push car had from one to one and a quarter inches play, and that the car "had a habit of getting off the track."

1. Upon the question of negligence there was a fair conflict in the evidence, and we think the case should not be reversed on the ground that there was insufficient evidence to sustain the verdict.

2. A section hand, employed in looking after and repairing the track of a railroad company engaged in inter-

state commerce, while employed in such work, is an employe engaged in interstate commerce; and, it being stipulated that defendant was engaged in interstate commerce, the inquiry is: Was the work which deceased was doing at the time of his injury a part of the interstate commerce in which defendant was engaged?

It was an interstate track and roadbed, which defendant was obliged to keep in repair to move cars carrying interstate commerce. Deceased, at the time of his injury, was engaged in inspecting and repairing the track, as well as removing old rails, which were along the side of, and which we think it fair to assume were taken from, the track. But whether this is a warranted assumption or not makes no material difference in this case, because a part of the duties of deceased at the time, and in which he was engaged, was to inspect and repair the track. The following cases support the conclusions herein announced:

*Chicago, K. & W. R. Co. v. Pontius,* 157 U. S. 209, 15 Sup. Ct. 585, 39 L. ed. 675; *Pedersen v. Delaware Co.,* 229 U. S. 146, 33 Sup. Ct. 648, 57 L. ed. 1125, Ann. Cas. 1914C, 153; *St. Louis Co. v. Seale,* 229 U. S. 156, 33 Sup. Ct. 651, 57 L. ed. 1129, Ann. Cas. 1914C, 156; *N. C. R. R. Co. v. Zachary,* 232 U. S. 248, 34 Sup. Ct. 305, 58 L. ed. 591, Ann. Cas 1914C, 159; *N. Y. Central & H. R. R. Co. v. Carr,* 238 U. S. 260, 35 Sup. Ct. 780, 59 L. Ed. 1298.

The judgment will be affirmed.

Affirmed.

White, C. J., and Scott, J., concur.