AMELIA HOAG, as Executrix, etc., of JOHN MORRELL HOAG, Deceased, Respondent, *v.* THE ULSTER AND DELAWARE RAILROAD COMPANY, Appellant.

Third Department, March 22, 1917.

Master and servant — negligence — action under Federal Employers' Liability Act for death of fireman caused by collision — interstate commerce — practice — right of plaintiff to inspection of orders given conductors and engineers of engines which collided — inspection of bills of lading and manifests.

Where in an action for negligence, brought under the Federal Employers' Liability Act, to recover for the death of the plaintiff's intestate, a fireman employed by the defendant, which owns and operates an intrastate railroad, it appears that after the decedent's engine had assisted in moving a freight and coal train and a milk train, it was ordered to meet and assist in moving a passenger train, and thereupon came into collision with the engine of the latter train, resulting in the death of the plaintiff's intestate, the plaintiff is entitled, under section 803 of the Code of Civil Procedure and rule 14 of the General Rules of Practice, to an inspection of the orders given the conductors and engineers of the passenger engine and of the engine upon which the decedent was employed, as the action is apparently based upon the collision having resulted from the defendant having given improper and perhaps inconsistent orders; but the plaintiff is not entitled to an inspection of the bills of lading and manifests of the property carried on the freight, coal and milk trains, showing the points from which and to which it was consigned, for the purpose of establishing that portions of the shipments were interstate, because such fact is wholly irrelevant, the decedent not having been killed while engaged in assisting in handling those trains.

In order to bring a case within the terms of the Federal Employers' Liability Act, the defendant must have been at the time of the occurrence engaged as a common carrier in interstate commerce, and the injured employee must have been employed by such carrier in such commerce.

KELLOGG, P. J., and WOODWARD, J., dissented, with opinion.

APPEAL by the defendant, The Ulster and Delaware Railroad Company, from an order of the Supreme Court, made at the Broome Special Term and entered in the office of the clerk of the county of Otsego on the 30th day of October, 1916.

*W. H. Johnson*, for the appellant.

*A. L. Kellogg*, for the respondent.

LYON, J.:

This is an appeal from an order directing discovery of books and papers, granted in a negligence action brought under the Federal Employers' Liability Act (35 U. S. Stat. at Large, 65, chap. 149, as amd. by 36 id. 291, chap. 143).

Defendant owns and operates an intrastate railroad, with its termini at Kingston and Oneonta. On June 16, 1916, plaintiff's testate was in defendant's employ as a fireman upon one of its engines. On that day his engine first assisted in moving a freight and coal train from Oneonta to Grand Hotel station. It then returned as far as Arkville and assisted in moving a milk train from Arkville up the grade to Grand Hotel station. It was then ordered to return to Arkville to meet and assist in moving defendant's passenger train, running extra. Reaching Arkville the engineer and conductor received orders to proceed with the engine to Roxbury to meet the extra passenger train there. When the engine had proceeded as far as the lower end of the Arkville yard it came into collision with the engine of the passenger train and plaintiff's testate was killed.

The order appealed from directed, as to the freight and coal and milk trains, that an inspection be given plaintiff of the bills of lading and manifests showing the points from which and to which the freight, coal, milk and other merchandise carried thereon were consigned. As to the said passenger train and the engine upon which plaintiff's testate was employed, the order directed that an inspection be given the plaintiff of the orders given the engineers and conductors of both engines.

The portion of the order directing an inspection of the bills of lading and manifests was clearly unwarranted. The purpose doubtless was to show that portions of the shipments were interstate. Assuming such to have been the case, estab-

lishing that fact was wholly irrelevant to plaintiff's cause of action. Plaintiff's testate was not killed while engaged in assisting in handling those trains. His employment in that connection had previously terminated. His engine had left both the freight and coal and milk trains at Grand Hotel station and had gone to Arkville pursuant to orders. At the time he met his death he had left the designated point and was engaged in an enterprise entirely disconnected from that of assisting in handling the two trains, that of going to meet the passenger train to assist in moving it. Under this state of facts the liability of the defendant cannot be predicated upon the employment of plaintiff's testate in assisting to move the freight and coal and milk trains, assuming that they carried interstate freight. The decision of the United States Supreme Court in the recent case of *Minneapolis & St. Louis R. R. Co.* v. *Winters* (242 U. S. 353) is very much in point. In that case the plaintiff was injured while making repairs to an engine which had been used in the hauling of freight trains over defendant's line engaged in both interstate and intrastate commerce. Apparently its last use before the plaintiff was injured was of such nature and it continued to be so used after the plaintiff was injured. The court says: " This is not like the matter of repairs upon a road permanently devoted to commerce among the States. An engine as such is not permanently devoted to any kind of traffic, and it does not appear that this engine was destined especially to anything more definite than such business as it might be needed for. It was not interrupted in an interstate haul to be repaired and go on. It simply had finished some interstate business and had not yet begun upon any other. Its next work, so far as appears, might be interstate or confined to Iowa, as it should happen. At the moment it was not engaged in either. Its character as an instrument of commerce depended on its employment at the time, not upon remote probabilities or upon accidental later events."

The decisions are uniform that in order to bring a case within the terms of the Federal Employers' Liability Act, the defendant must have been, at the time of the occurrence, engaged as a common carrier in interstate commerce, and the injured employees must have been employed by such carrier in

such commerce. (*North Carolina Railroad Co.* v. *Zachary*, 232 U. S. 248; *Illinois Central Railroad* v. *Behrens*, 233 id. 473; *Chicago, Burlington & Quincy Railroad* v. *Harrington*, 241 id. 177.)

However, we think that the portion of the order appealed from which directed that an inspection be allowed the plaintiff of the orders given the conductors and engineers of the passenger engine and of the engine upon which plaintiff's testate was employed known as No. 29, was warranted. The petition states that the passenger engine was running extra, and that the train which had left Oneonta that afternoon, evidently on its way to Kingston, was conveying a number of defendant's agents, officers and employees on a tour of inspection of defendant's railroad when the collision occurred.

Apparently the action is based upon the collision having resulted from the defendant having given improper and, perhaps inconsistent orders to the conductors and engineers in charge of the two engines. The orders are, therefore, material and will be competent and necessary evidence upon the trial. The petition alleged that neither the original orders nor copies thereof are within plaintiff's possession or under her control; that she has no personal knowledge thereof, and that her information regarding the same is mere hearsay. The relation which existed between the defendant and plaintiff's testate was that of master and servant, and we think the plaintiff is entitled to know under what orders of the master the engine upon which her testate was employed, as well as the other engine, was being operated. The order for inspection was granted under section 803 of the Code of Civil Procedure, and rule 14 of the General Rules of Practice, subdivision 3 of which rule reads: "Either party may be compelled to make discovery of any book, document, record, article or property in his possession or under his control, or in the possession of his agent or attorney, upon its appearing to the satisfaction of the court that such book, document, record, article or property is material to the decision of the action or special proceeding, or some motion or application therein, or is competent evidence in the case, or an inspection thereof is necessary to enable a party to prepare for trial."

The tendency of the courts during later years has been very properly towards liberality in extending the right of discovery and inspection, to the end that the truth might be made to appear and the cause of justice promoted.

Whether the act of officials of an intrastate railroad in inspecting its track over which it is alleged that at times interstate commerce passed, and the presence of plaintiff's testate as fireman upon the engine on his way to assist the passenger train up the grade, constituted his being engaged in interstate commerce, is not now before us for consideration. In fact, perhaps, plaintiff's counsel may not rely upon this circumstance as establishing the right of the plaintiff to claim that her testate met his death while engaged in interstate commerce.

The order appealed from should be affirmed in respect of the orders to the conductors and engineers of the colliding engines, and in other respects reversed, without costs to either party.

All concurred, except KELLOGG, P. J., who wrote for affirmance, with whom WOODWARD, J., concurred.

KELLOGG, P. J. (dissenting):

It is a mistake to assume that this action is brought under the Federal Employers' Liability Act (35 U. S. Stat. at Large, 65, chap. 149, as amd. by 36 id. 291, chap. 143). The summons was served without a complaint. Attached to the summons was a notice that the plaintiff would take judgment for $35,000 damages on account of the defendant's negligence under the Federal Employers' Liability Act.

There is no place for such a notice in a negligence action under sections 419 and 420 of the Code of Civil Procedure.

However, if the notice was properly given it does not prevent the plaintiff from serving a complaint for any other cause of action. (*Sharp* v. *Clapp,* 15 App. Div. 445; *Johnstone* v. *Weibel,* 131 id. 166.)

It does not appear that the defendant is a self-insurer, or has obtained insurance for its employees under the Workmen's Compensation Law of this State. Apparently, therefore, the plaintiff may, if the case does not fall within the Federal Employers' Liability Act, elect under section 52 of the Work-

men's Compensation Law to claim damages, and in this action have all the benefits given her by that section.

The plaintiff, therefore, is at liberty to frame her complaint according to the facts as she may ascertain them to be. She has lost her husband; she is not sure of the circumstances causing his death, but has reason to believe that the investigation sought will enable her to frame a complaint alleging a cause of action therefor. We cannot try the merits upon this application. The practice is very liberal, and, under the circumstances, it is reasonable that she should have an opportunity to obtain what information she can from the defendant as to the circumstances causing the death. I, therefore, favor an affirmance of the order.

WOODWARD, J., concurred.

Order appealed from affirmed in respect of the orders to the conductors and engineers of the colliding engines, and in other respects reversed, without costs to either party.