8641.  ATLANTIC COAST LINE RAILROAD COMPANY *v.* TOMLINSON.

WADE, C. J.   1.  Where a section foreman was required, under the terms
    of his contract of employment, to maintain the safety of a portion of
    railroad-track used in interstate commerce by the company employing
    him, and in the performance of his duty, acting (according to his testi-
    mony) upon *information* to the effect that a washout had occurred on
    that portion of the track, immediately undertook to go, on the hand-
    car furnished him for emergencies of this character, to the point where
    he was advised the trouble existed, accompanied by the section-hands
    under his control, and with all the appliances reasonably necessary to
    effect contemplated repairs in the track, and was injured while on the
    way and before arriving at his intended destination, the jury were·
    authorized to infer that at the time of the injury he was engaged in
    interstate commerce, notwithstanding it later appeared that the wash-
    out in question was on a private connecting spur-track owned by a
    different corporation, and not on the carrier's line which was used in
    interstate commerce, and that no repairs whatever were in fact neces-
    sary at or near this point on the main line itself.   Under the ruling
    in the Pederson case (229 U. S. 146, 57 L. ed. 1125, 33 Sup. Ct. 648,
    Ann. Cas. 1914C, 153), where the plaintiff was held to be employed
    in interstate commerce because at the time he was injured he was en-
    gaged in carrying certain bolts or rivets "*which were to be used*" that
    night or the next morning in repairing a bridge, regularly in use in
    interstate commerce, what the employee in this case was seeking to
    accomplish, and was actually at the time he was injured engaged in
    attempting to accomplish, in order to render safe, or with the design
    of rendering safe, the track regularly used in interstate commerce by
    the railroad company for which he was working, and which it was his
    duty to render safe, would determine the character of his employment,
    regardless of whether he succeeded in achieving the object attempted,
    and regardless of the actual existence or non-existence of the emergency
    which called forth his efforts.   See also the decision in North Carolina
    Railroad Co. *v.* Zachary, 232 U. S. 248 (58 L. ed. 591, 34 Sup. Ct. 305,
    Ann. Cas. 1914C, 159), holding it to be a jury question, in a similar
    case, whether the employee was engaged in interstate commerce.   If a
    brakeman "is hurt in the course of his employment *while going to a
    car to perform* [italics ours] an interstate duty, or if he is injured
    while repairing an engine [intended to be used] for an interstate trip,
    he is entitled to the benefits of the Federal act, although the accident
    occurred prior to the actual coupling of the engine to the interstate
    cars." New York Central &c. R. Co. *v.* Carr, 238 U. S. 261 (35 Sup. Ct.
    780, 59 L. ed. 1298, 1299).   See also St. Louis &c. R. Co. *v.* Seale, 229
    U. S. 156 (57 L. ed. 1129, 33 Sup. Ct. 651, Ann. Cas. 1914C, 156).
    Here the plaintiff was, according to his testimony, going to a point on
    the track of a railroad used in interstate commerce, in the perform-
    ance of his regular duty, with the purpose and intention "to perform
    an interstate duty" by making certain necessary repairs in the track
    so used and to be used.   The decision in Erie Railroad Co. *v.* Welsh,

242 U. S. 303 (37 Sup. Ct. 1116, 61 L. ed. 319), holding that a yard-conductor on an interstate railway, injured while alighting from a slowly moving freight-engine for the purpose of reporting to the yard-master's office for further orders, after having executed all previous orders, was not employed in interstate commerce, is not in conflict with what is herein ruled, as there was more than a mere expectation that the plaintiff in this case would presently be called upon to perform a task in interstate commerce, for he was then actually engaged in such a task, since he was actually proceeding on his way, in the line of his regular duty, with the purpose and intention of repairing the interstate track at the time he was injured, and was in fact doing that which under his contract of employment he was bound to do. See Lamphere v. Oregon R. &c. Co., 196 Fed. 336 (116 C. C. A. 156, 47 L. R. A. (N. S.) 1).

2. The doctrine of assumption of risk is not abrogated by the Federal "employer's liability act" of April 22, 1908 (35 Stat. 65, U. S. Comp. St. 1916, §§ 8657-8665), except in so far as relates to injuries resulting in whole or in part from the negligence of the officers, agents, or employees of an interstate carrier, or by reason of any defect or insufficiency due to its negligence as to its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment. The plaintiff in this case assumed the ordinary risks of his employment, among which was the danger to be apprehended from encountering trains upon that section of the railroad-track in his charge, while working upon or moving backward and forward along it, and also the danger of injury resulting from the necessity for hurriedly removing his hand-car from the tracks of the railroad upon the near approach of its trains. The rules of the company required him to send forward a flagman in advance of his car when approaching a curve in the track; and this he omitted to do, because, on bringing his car to a standstill where the curve commenced, he failed to hear an approaching train, and, relying upon the statement of the agent and telegraph operator of the defendant at the station from which he began his journey, that he had ample time to reach a certain point on the road before a belated train approaching from that direction could arrive thereat, he allowed his hand-car to proceed along the said curve, which extended through a cut, until it so closely approached the advancing train that it was necessary to remove the hand-car from the tracks in great haste, in order to prevent a collision with the said train, and he thereby severely strained himself and thus brought about certain permanent physical injuries.

(a) No negligence on the part of the coemployees of the plaintiff in removing the hand-car from the track was alleged or proved, nor was any negligence shown in the running of the freight-train with which the plaintiff so nearly collided and in escaping which he incurred injury; but whether the injury resulted solely in consequence of an ordinary risk of his employment, which the plaintiff assumed when engaging to perform the duties of a section-foreman, or was one which was obvious under the information imparted to him by the telegraph

operator, or whether it resulted in part from a risk arising on account of the negligence of an employee of the defendant company, acting within the score of his authority, which was not assumed by him and recovery for which was not barred, were questions of fact for determination by the jury.

(*b*) The court therefore erred in failing to instruct the jury touching the doctrine of assumption of risk, and in failing to give in charge the fourth section of the Federal "employer's liability act," providing what risks are assumed; as complained of in the 6th ground of the amendment to the motion for a new trial.

3. There is no substantial merit in the ground of the motion for a new trial which complains that the court declined to admit testimony offered by the defendant to show the purpose of the railroad company in requesting telegraphic and written reports from section-foreman as to accidents occurring to them or to the employees under their control; for, even if admissible, it does not reasonably appear that the exclusion of this testimony could have affected the verdict.

4. The 5th and 7th grounds of the motion for a new trial, which complain of the admission of certain testimony touching pain and suffering endured by the plaintiff, and of the charge of the court that pain and suffering was an element of damage for which a recovery might be had, if resulting from the injury sustained, are expressly abandoned in the brief of counsel for the plaintiff in error. It may not be amiss, however, to call attention to the ruling of the United States Supreme Court in St. Louis &c. R. Co. *v.* Craft, 237 U. S. 648 (35 Sup. Ct. 704, 59 L. ed. 1160), construing the amendment of April 5, 1910 (36 Stat. 291), to the Federal "employer's liability act" of April 22, 1908, and definitely holding that damages for pain and suffering may be recovered under the act.

5. The only remaining ground of the motion for new trial is that the verdict (for $6,000) was excessive; but, since it does not appear that the verdict was the result of bias or prejudice on the part of the jury, and there being some testimony to authorize the recovery, this court can not invade the province of the jury and grant a new trial for that reason.

           *Judgment reversed.* *Jenkins and Luke, JJ., concur*

         DECIDED JANUARY 30, 1918.

Action for damages; from Brooks · superior court—Judge Thomas. December 2, 1916.

*Bennet & Branch, Russell Snow, Sam. T. Harrell,* for plaintiff in error. *Theodore Titus, J. E. Morris Jr.,* contra.