### ERIE R. CO. v. VAN BUSKIRK.

(Circuit Court of Appeals, Third Circuit. December 27, 1915.)

No. 1970.

COMMERCE ⬅27—INJURY TO SERVANT—EMPLOYERS' LIABILITY ACT—"INTERSTATE COMMERCE."

Plaintiff's intestate was an engine hostler in railway yards. A machinist was directed to take a yoke from a disused clam shell bucket and ship it to Bergen, and, being unable to remove the yoke in the then position of the bucket, applied for help to the engineer of a hoist used in lifting coal from a coal car and dumping it in the tenders of standing engines. Deceased left an engine, which had come in for hostling, walked some 150 feet to the place where the bucket was being hoisted, and was killed when it suddenly fell. *Held* that, assuming that he was engaged in interstate commerce while acting as hostler, the machinist, in attempting to remove the yoke, was not employed in interstate commerce, the hoist was not, while moving the bucket, an instrumentality

used in such commerce, and deceased, in assisting with the bucket, was not assisting the machinist in interstate commerce, within Employers' Liability Act April 22, 1908, c. 149, 35 Stat. 65 (Comp. St. 1913, §§ 8657–8665), making carriers liable for injury or death suffered by employés while employed in interstate commerce.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 25; Dec. Dig. ⊕═27.

For other definitions, see Words and Phrases, First and Second Series, Interstate Commerce.]

In Error to the District Court of the United States for the District of New Jersey; Wm. H. Hunt, Judge.

Action by Elmira Van Buskirk, administratrix of William Van Buskirk, deceased, against the Erie Railroad Company, for injuries caused by the sudden falling of a bucket, which was being moved by means of a hoist. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

Collins & Corbin and George S. Hobart, all of Jersey City, N. J., for plaintiff in error.

John C. Oldmixon and Frank F. Davis, both of New York City, for defendant in error.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

BUFFINGTON, Circuit Judge. In the court below, Mrs. Elmira Van Buskirk, a citizen of New Jersey and administratrix of William Van Buskirk, brought suit and recovered a verdict against the Erie Railroad Company, a citizen of New York, for damages caused, it was alleged, by defendant's negligence. On entry of judgment, defendant sued out this writ.

The action was based on a liability created by the federal Employers' Liability Act which provides:

"Every common carrier by railroad while engaging in commerce between any of the several states * * * shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employé, to his or her personal representative * * * for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employés of such carrier." 35 Stat. 65.

The underlying question involved in this case is whether at the time of his death William Van Buskirk was so employed in interstate commerce, for if he was not no liability was created by the act. On the trial the court below submitted to the jury the question whether the deceased was so employed, which action is here assigned for error, and it is further alleged the court's duty was to itself hold that the proofs showed the deceased, in doing the act which resulted in his death, was not employed in interstate commerce.

The testimony on behalf of the plaintiff tended to show the Erie Railroad was engaged in both interstate and intrastate transportation of freight and passengers. In aid of such transportation it used a number of switching engines in a terminal yard to shift cars used indiscriminately in interstate and intrastate commerce. The decedent

was an engine hostler, whose duty was to coal, sand, water, and do the general hostler work engines required before and after service. Assuming, for present purposes, that one engaged in such work was employed in interstate commerce, as contemplated by the act, the fact is that the defendant did not meet his death while doing any act in or about the hostling of an engine. On the contrary, just prior to his death he left engine No. 106, which had come in for hostling and was standing over an ash pit, and walked some 150 feet up the switch track to the place where he was killed. The circumstances were these:

Shortly before, one Krueger, who was a machinist in a nearby machine shop of the railroad, was directed by his foreman to go to the point in question and take a yoke from a disused clam shell bucket and ship it to Bergen. Krueger found the bucket standing against a shanty in such a position that it had to be moved to enable him to remove a pin which held the yoke. Near by stood a Brown hoist or crane. This crane was mounted on a car, which was moved from place to place along the tracks and by means of a clam shell bucket, suspended from a swinging arm, the hoist lifted coal from a coal car and dumped it in the tenders of standing engines. The hoist had steam up at the time, but stood idle on the track about 150 feet from switching engine No. 106. Being unable to move the clam shell from the shanty, Krueger applied to Hancke, the engineer of the hoist, for help. Thereupon Hancke swung round his crane and lowered the clam shell bucket in use on the crane down to the clam shell desired to be moved. Krueger then fastened his clam shell to the hoist's clam shell and directed Hancke to lift it. This Hancke did, but in swinging it around he carried the bucket too far and dropped it on an ash pit track. Thereupon Kreuger had Hancke lift it again, so as to move it from the track. It was while it was being swung around, and while Krueger was steadying it with his hand to prevent it from twisting, decedent came up the track. Krueger testified that, beyond saying "Good morning" to him, and "What are you trying to do there?" he made no remark or request to the decedent, and indeed supposed he had gone into the shanty.

Another hostler, Maloney by name, was also injured at the same time and in the same way as decedent. Maloney's account of their employment and of the accident is as follows:

"X-Q. 238. Van Buskirk was what you call an engine hostler? A. An engine hostler. X-Q. 239. He took engines around the yard from time to time? A. Yes. X-Q. 240. And when he did that, didn't he do that under the orders of the yardmaster? A. Sure, from the yardmaster—got our orders. X-Q. 241. Van Buskirk got his orders from the yardmaster, too, didn't he? A. That's right. X-Q. 242. So that Van Buskirk was under the orders of the yardmaster? A. Under the orders of the yardmaster. * * * X-Q. 246. You and Van Buskirk went to work about what time in the morning? A. Six o'clock in the morning. X-Q. 247. Did you go together? A. Yes, sir. X-Q. 248. And you went to what is called the ash pit, did you not? A. Yes. X-Q. 249. Is that the place where engines are stationed in order to dump the ashes from them? A. Yes, sir. X-Q. 250. Was there an engine on the ash pit when you went there that morning? A. No, sir. X-Q. 251. How long did you stay around the ash pit? A. From 6 o'clock until 20 minutes after 8, up to the time of the accident. X-Q. 252. While you were there did an engine come to the ash pit? A. Yes. X-Q. 253. And stopped there?

A. Yes. X-Q. 254. Who brought that engine to the ash pit? A. Engineer McDonald. X-Q. 255. Did you see McDonald go away after he brought the engine? A. Yes. X-Q. 256. He left the engine on the pit and went away? A. Yes. X-Q. 257. Did Van Buskirk do anything? A. Van Buskirk got up on the engine after the engineer went away—on 106. X-Q. 258. On what part of the ash pit was the engine at that time? A. About the middle pile. X-Q. 259. How far was that from the Brown hoist? A. About 150 feet, I guess. X-Q. 260. Did you go up on that engine? A. No; I did not. X-Q. 261. Was it any part of your work to go on the engine? A. If he wasn't there, I would go and see how much water there was in the boiler. X-Q. 262. But Van Buskirk was there, and you did not go up? A. Yes. X-Q. 263. Was that engine watered while you were there, before the accident? A. No; it was not watered at all. X-Q. 264. Do you know whether the ashes were dumped from it before the accident? A. I couldn't tell you. I know two men were cleaning up. X-Q. 265. Some of the ash men? A. Yes. X-Q. 266. You don't know whether they finished or not? A. No. X-Q. 267. Was that engine coaled before the accident? A. No; she hadn't been started at all. X-Q. 268. Did you see Van Buskirk get down from the engine? A. No; I did not. I seen him come down and go from there; that's the last I saw him; he walked right by me. X-Q. 269. In which direction did he go by you? A. Going east. X-Q. 270. Was the engine still on the ash pit at that time? A. Yes, sir. X-Q. 271. Was there any one else in charge of that engine, outside of Van Buskirk? A. No; nobody but Van Buskirk. X-Q. 272. And as Van Buskirk went east, did he go by the bucket? A. Yes; he went on the other side of the bucket. X-Q. 273. The other side of the bucket? A. Yes. X-Q. 274. That's the time you saw him on one side? A. Yes; while I was on the west side. X-Q. 275. And, when he walked by you, had you yet started to shove the bucket? A. Yes; I started to put my hand against the engine. X-Q. 276. Who told you to shove the bucket? A. Nobody. X-Q. 277. Did you have anything to do with looking after that bucket? A. No, sir; I didn't have nothing to do with it at all. X-Q. 278. Why did you shove it? A. Because, I guess I must have been foolish. X-Q. 279. Was the yardmaster around at that time? A. No, sir. X-Q. 280. Had you ever shoved such a bucket before? A. No, sir; I never shoved the bucket before. X-Q. 281. Had you ever had anything to do with the bucket? A. No; I never had anything to do with the bucket; followed the engine. That was all I had to do. X-Q. 282. Had you seen Van Buskirk working around the yard for some time before he was hurt? * * * A. Yes, I worked with him for four or five years. X-Q. 283. Had you ever seen him have anything to do with the Brown hoist bucket? A. No; I didn't see him. I seen him under it; but he was not hired on that bucket. (Mr. Davis, in behalf of plaintiff, moved that the last part of the answer be stricken from the record, and the court so ordered.) X-Q. 284. When you saw Van Buskirk by the bucket, was that when the engine was being coaled? A. Yes, sir. X-Q. 285. Had you ever seen him have anything to do with running the bucket or operating the machine? A. He done it of his own accord. I see him going up there. X-Q. 286. On the bucket? A. No; but on the' machinery that ran it. X-Q. 287. Was that while you were coaling the engine? A. Yes. X-Q. 288. That's while the engineer was up there? A. Yes."

From these facts and proofs it is clear that the bucket from which Krueger was taking the yoke was not in actual or contemplated interstate commerce use, that Krueger in attempting to remove such yoke was not employed in interstate commerce, and that the Brown hoist which he enlisted to help move the bucket was not, while so employed, an instrumentality used in interstate commerce. Such being the case, it follows that Maloney and Van Buskirk were not engaged in assisting Krueger in interstate commerce when the unfortunate accident occurred. It follows, therefore, that all the persons and all the agencies

connected with this accident were so distinctively noninterstate commerce in character that it was the duty of the court below on trial, and of this court now on appeal, to hold, under the undisputed facts, that as a matter of law the decedent was not engaged in interstate commerce when he was killed and that therefore the federal Employers' Liability Act, which imposes "damages to any person suffering injury while he is employed  *  *  *  in such commerce," does not apply in this case.

Between the filing of this opinion and its present publication the case of Shanks v. Delaware, Lackawanna & Western Ry. Co., 239 U. S. 556, 36 Sup. Ct. 188, 60 L. Ed. ——, was decided by the Supreme Court. The conclusion reached by us is supported by that case.

The judgment below must therefore be reversed, and the case remanded for further proceedings.