### VAN BUSKIRK v. ERIE R. CO.

(Circuit Court of Appeals, Third Circuit. March 6, 1922.)

No. 2750.

Commerce ⬅️27(5) —Engine hostler held employed in "interstate commerce" when killed.

Plaintiff's intestate, employed by defendant railroad company as engine hostler at a terminal, under whose direction engines, used in both interstate and intrastate commerce were cleaned, coaled, watered, and sanded, preparatory to their runs, was employed in "interstate commerce," within Employers' Liability Act April 22, 1908, § 1 (Comp. St. § 8657), and was so employed when killed while going from an engine being coaled under his direction to another place not inconsistent with the duties of his employment.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Interstate Commerce.]

Woolley, Circuit Judge, dissenting.

In Error to the District Court of the United States for the District of New Jersey; Charles F. Lynch, Judge.

Action at law by Elmira Van Buskirk, administratrix of the estate of William Van Buskirk, deceased, against the Erie Railroad Company. Judgment for defendant, and plaintiff brings error. Reversed.

Frank F. Davis, of New York City, for plaintiff in error.

Collins & Corbin, of Newark, N. J. (George S. Hobart, of Newark, N. J., of counsel), for defendant in error.

Before WOOLLEY and DAVIS, Circuit Judges, and THOMPSON, District Judge.

DAVIS, Circuit Judge. Elmira Van Buskirk brought this action under the federal Employers' Liability Act (Comp. St. §§ 8657–8665) to recover damages for the death of her husband, William Van Buskirk, occasioned by negligence of the Erie Railroad Company, his employer. The case has been tried twice. At the first trial the plaintiff had a verdict, but the judgment was reversed by this court on writ of error, upon a finding, as matter of law, that the decedent was not employed in interstate commerce at the time he was killed. 228 Fed. 489. On error to the Supreme Court the writ was dismissed for want of jurisdiction. 248 U. S. 549, 39 Sup. Ct. 183, 63 L. Ed. 416. At the second trial, the court, viewing the facts as substantially the same as those of the first trial, and regarding itself bound by the decision of

⬅️For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

this court as the law of the case, directed a verdict for the defendant. Thereupon the plaintiff sued out this writ of error.

The facts at both trials were in the main the same, and were practically undisputed. In order, however, to withdraw herself from under the law of the case as declared by this court on the first writ of error, the plaintiff maintains that there was one matter which distinguished the two trials, and which permitted them to be conducted on different principles of law. We shall therefore review the second trial, not under the law of the case as declared on the first writ of error, but on the theory under which it was conducted. For the main facts of the case on the second trial we refer to the statement of facts on the first trial made in the opinion of this court reported at 228 Fed. 489. We shall repeat only enough of the facts to show the distinction between the two trials which the plaintiff urges, and to disclose the grounds for our decision on this writ of error.

Van Buskirk was employed by the defendant as an engine hostler in its terminal yard at Jersey City. His work consisted in supervising the cleaning, coaling, watering, and sanding of engines after they had completed a day's work and before starting on another. The engines were cleaned at an ash pit, and were watered, sanded, and coaled at different places. Coaling was done by a hoist, called a Brown hoist. This hoist was equipped with a crane and a clam-shell bucket, and moved by its own power from place to place, where coal was to be transferred from coal cars to engine tenders. On the day in question a switching engine, engaged in moving cars used indiscriminately in interstate and intrastate commerce, was brought to the ash pit and turned over to Van Buskirk for preparation for further work.

This case was tried before apparently on the theory that Van Buskirk was engaged with several other men in removing a heavy iron bucket from its position against a shanty about 150 feet from the ash pit, preparatory to shipping it or one of its parts to the Bergen yard, about a mile distant. Miles Maloney, who was on the west side of the bucket, testified at the first trial that he saw Van Buskirk go on the other or east side of the bucket, and about that time he (Maloney) began to shove the bucket:

"Q. Had you ever seen him have anything to do with the Brown hoist bucket? A. No; I didn't see him. I seen him under it.

"Q. When you saw Van Buskirk by the bucket, was that when the engine was being coaled? A. Yes, sir.

"Q. Had you ever seen him have anything to do with running the bucket or operating the machine? A. *He done it of his own accord. I see him going up there.*

"Q. *On the bucket?* A. *No; but on the machinery that ran it.*

"Q. Was that while you were coaling the engine? A. Yes.

"Q. That's while the engineer was up there? A. Yes."

From this and other testimony the court at the first trial concluded:

"From these facts and proofs it is clear that the bucket from which Krueger was taking the yoke was not in actual or contemplated interstate commerce use, that Krueger, in attempting to remove such yoke, was not employed in interstate commerce, and that the Brown hoist, which he enlisted to help move the bucket, was not, while so employed, an instrumentality used in interstate commerce. Such being the case, it follows that Maloney and

Van Buskirk were not engaged in assisting Krueger in interstate commerce when the unfortunate accident¹ occurred. It follows, therefore, that all the persons and all the agencies connected with this accident were so distinctively noninterstate commerce in character that it was the duty of the court below on trial, and of this court now on appeal, to hold, under the undisputed facts, that as a matter of law the decedent was not engaged in interstate commerce when he was killed and that therefore the federal Employers' Liability Act, which imposes 'damages to any person suffering injury while he is employed * * * in such commerce,' does not apply in this case."

There was no evidence in the second trial that Van Buskirk did anything in running the bucket, operating the machine, or that he went up or the machinery that ran the bucket, as there was in the former trial. On the contrary, there was testimony that he did not have anything, directly or indirectly, to do with the Brown hoist, by virtue of his position as hostler.

While the engine was being supplied with coal, sand, and water under his supervision, Van Buskirk could remain on it, or he could get off and go over to the shanty, and in going he would have to pass directly by the Brown hoist. He left his engine and went toward the shanty, but whether he was going to the shanty, or to some other place near by, the record does not disclose. The bucket was sitting beside the shanty. It had been attached to the bucket of the Brown hoist. When Van Buskirk arrived near the shanty, the Brown hoist was in the act of swinging the bucket around, when it fell and killed him.

The engine was admittedly an instrumentality of interstate commerce, and when Van Buskirk took charge of it, to have it supplied with coal, sand, and water, he was engaged in such commerce. Pedersen v. Delaware, Lackawanna & Western Railroad Company, 229 U. S. 146, 33 Sup. Ct. 648, 57 L. Ed. 1125, Ann. Cas. 1914C, 153; Erie Railroad Co. v. Winfield, 244 U. S. 170, 37 Sup. Ct. 556, 61 L. Ed. 1057, Ann. Cas. 1918B, 662. The case turns upon whether or not, when he got down from his engine and went over toward the Brown hoist and shanty, he was still engaged in interstate commerce. If he was, as plaintiff contends, it was error to direct a verdict; if he was not, as defendant contends, the direction was without error.

The case of North Carolina Railroad Co. v. Zachary, 232 U. S. 248, 260, 34 Sup. Ct. 305, 309 (58 L. Ed. 591, Ann. Cas. 1914C, 159), is directly in point. The work of inspecting, oiling, firing, and preparing the engine for its run with interstate freight, the court held, constituted employment in interstate commerce. The plaintiff averred, and the evidence tended to support, that after preparing his engine for the run the deceased attempted to cross certain tracks that intervened between the engine and his boarding house, located a short distance away, and while crossing the tracks he was struck by another engine and killed. Defendant denied that at the time the deceased was killed he was engaged in interstate commerce. In discussing this question, Mr. Justice Pitney, speaking for the court, said:

"Again, it is said that, because deceased had left his engine and was going to his boarding house, he was engaged upon a personal errand, and not upon the carrier's business. Assuming (what is not clear) that the evidence fairly tended to indicate the boarding house as his destination, it nevertheless also appears that deceased was shortly to depart upon his run, having just pre-

pared his engine for the purpose, and that he had not gone beyond the limits of the railroad yard when he was struck. There is nothing to indicate that this brief visit to the boarding house was at all out of the ordinary, or was inconsistent with his duty to his employer. It seems to us clear that the man was still 'on duty,' and employed in commerce, notwithstanding his temporary absence from the locomotive engine."

That case is practically on all fours with this case. If going to the boarding house was not inconsistent with his duty to his employer, and he continued to be employed in interstate commerce, going from the engine toward the shanty, where he had a right to go while the engine was being prepared for further work, was also consistent with duty to his employer, and did not terminate his employment in interstate commerce. In Shanks v. Delaware, Lackawanna & Western Railroad, 239 U. S. 556, 558, 36 Sup. Ct. 188, 189 (60 L. Ed. 436, L. R. A. 1916C, 794), the Supreme Court said:

"The test of employment in such commerce in the sense intended is, Was the employé at the time of the injury engaged in interstate transportation, or in work so closely related to it as to be practically a part of it?"

Applying this test to the Zachary Case, the court held that the requisite employment in interstate commerce existed—

"where a fireman, having prepared his engine for a trip in interstate commerce, and being about to start on his run, is walking across adjacent tracks on an errand consistent with his duties."

Going over toward the shanty was consistent with Van Buskirk's duty to his employer. While the engine was being prepared, he might stay on it, or "he could get off and go to the shanty, or where he liked."

Under proper instructions as to negligence, the case should have been submitted to the jury. The judgment of the District Court is reversed, and a new trial granted.

WOOLLEY, Circuit Judge (dissenting). The court has reversed the judgment below on a finding that the facts of this case are practically the same as the facts in N. C. R. R. Co. v. Zachary, 232 U. S. 248, 34 Sup. Ct. 305, 58 L. Ed. 591, Ann. Cas. 1914C, 159, and that, accordingly, the law is the same. The court's recital of the controlling facts are, that Van Buskirk could, within the line of his duty, remain on the engine or

"get off and go over to the shanty and, in going, he would have to pass directly by the Brown hoist (where he was killed). He left his engine and went toward the shanty, but whether he was going to the shanty, or to some other place nearby, the record does not disclose. * * * Going over toward the shanty was consistent with Van Buskirk's duty to his employer."

This impression of the record was gathered, I surmise, from evidence to the effect that there was in the vicinity of the hoist a shanty to which Van Buskirk was at times accustomed to go, and also from the plaintiff's theory of the accident that when Van Buskirk met his death "he was simply passing by the hoist" on his way to the shanty. I find nothing in the record which supports this theory of the accident or sustains the conclusion on which the court, raising the analogy to the Zachary Case, bases its opinion. The facts, as I read them, are these:

Van Buskirk, when last seen alive, was in charge of an engine en-

gaged in interstate commerce. One hundred and fifty feet from the engine he was found dead under a bucket which had fallen when being moved by a hoist not engaged in interstate commerce. This is the whole story.

The question of law submitted on this narrow record, as stated by the plaintiff after showing the decedent's status as an employé in interstate commerce when at the engine, is as follows:

'Was this status in any way changed or affected when he left the engine temporarily and passed to the place where he met with his fatal accident?"

The plaintiff, of course, says his status was not changed. This, in effect, is a proposition of law that an employé once in interstate commerce is presumed to continue in interstate commerce until the contrary is proved. The same proposition, differently stated and as applied to the dearth of facts in this case, is that an employé once in interstate commerce may recover under the federal Employers' Liability Act without showing the character of the service in which he was engaged when later he was injured. I do not understand this to be the law. As I read the law, the plaintiff can recover only on an affirmative showing that Van Buskirk suffered injury "while he (was) employed" in interstate commerce. The character of his employment, whether in interstate or intrastate commerce, depends on the particular service in which he was engaged at the time of his injury. Illinois Central R. R. Co. v. Behrens, 233 U. S. 473, 478, 34 Sup. Ct. 646, 58 L. Ed. 1051, Am. Cas. 1914C, 163. What his employment was on other occasions is immaterial. Shanks v. D., L. & W. R. R. Co., 239 U. S. 556, 558, 36 Sup. Ct. 188, 60 L. Ed. 436, L. R. A. 1916C, 797.

There is no evidence of what Van Buskirk was doing at the time of his injury. It is admitted that his duties as hostler did not call him to the hoist and that he had no duties in relation to the hoist. Having been seen alive at the engine and having been found dead under the bucket, the inference is obvious that he left the engine and went to the hoist. No motive for this act is disclosed and no fact is given from which one can be inferred. Everything is left to conjecture. He might have been on an errand incident to his work which was so closely related to it as to be practically a part of it. Then he would have retained the character of his last employment, as in N. C. R. R. Co. v. Zachary, 232 U. S. 248, 34 Sup. Ct. 305, 58 L. Ed. 591, Ann. Cas. 1914C, 159, and Erie R. Co. v. Winfield, 244 U. S. 170, 37 Sup. Ct. 556, 61 L. Ed. 1057, Ann. Cas. 1918B, 662. Or he might have been on an errand independent of and inconsistent with his work. Then he would have lost the status which last he had. Krysiak v. Pennsylvania R. R. Co. (C. C. A.) 270 Fed. 758, 759, 760. Or he might not have been on an errand at all, but was drawn to the hoist by curiosity or by a desire to help. Or he might have been wandering about purposelessly. Then again he would have lost his relation to commerce. In holding, negatively, that the employé in N. C. R. R. Co. v. Zachary was on a visit not inconsistent with his duty, or, as stated positively in Shanks v. D., L. & W. R. R. Co., 239 U. S. 556, 558, 36 Sup. Ct. 188, 60 L. Ed. 436, L. R. A. 1916C, 797, that he was "on an errand consistent with

his duties," we assume, of course, that the Supreme Court knew what the errand of the employé was. But the trouble with this case is that no one knows whether Van Buskirk was on an errand; or, if on an errand, no one knows its nature. There is no evidence which shows ever so remotely what he was doing when he was killed. Therefore, there is nothing in the record which proves that his presence at the hoist was either consistent with or inconsistent with his duties as hostler employed in interstate commerce. The fact that he had in the past gone to the shanty for purposes which, we may assume, were consistent with his duties within the rule of the Zachary Case is not evidence that at the time of his death he was, as a matter of fact, on his way to the shanty. There is no evidence that he walked toward the shanty. His movement toward the shanty is inferred from the fact that he was killed at the hoist, the shanty and hoist being in the same general direction from the engine.

Assuming that Van Buskirk when at the engine was employed in interstate commerce, I find the plaintiff has failed to sustain the burden of showing that his after-conduct at the place and time of his injury was in the line of his work or was so closely related to his duties as to be practically a part of the interstate commerce to which his engine was devoted. Pedersen v. D., L. & W. R. R. Co., 229 U. S. 146, 33 Sup. Ct. 648, 57 L. Ed. 1125, Ann. Cas. 1914C, 153. In other words, I find the plaintiff has failed affirmatively to show that Van Buskirk sustained his injury while employed in interstate commerce. For these reasons I feel constrained to dissent from the judgment of the court.