17127. OCEAN ACCIDENT & GUARANTY CORPORATION LIMITED *v.* COUNCIL.

1. The terms of the workmen's compensation act (§ 39a), while providing that a wife shall be conclusively presumed to be dependent upon the husband, specifically excepts from such provision a wife who has voluntarily deserted or abandoned the husband at the time of the accident. Park's Code Supp. 1922, § 3154(mm), (a).

2. It is well settled that the findings of the industrial commission on questions of fact, which would include any issue upon the question of voluntary desertion by a claimant wife, if supported by any evidence, are conclusive. *Georgia Casualty Co.* v. *Martin,* 157 *Ga.* 909 (122 S. E. 881); *New Amsterdam Casualty Co.* v. *Sumrell,* 30 *Ga. App.* 682 (118 S. E. 786); *Travelers Insurance Co.* v. *Bacon,* 30 *Ga. App.* 728 (119 S. E. 458); *London Guarantee &c. Co.* v. *Shockley,* 31 *Ga. App.* 762 (122 S. E. 99); *American Mutual Liability Insurance Co.* v. *Adams,* 32 *Ga. App.* 759 (124 S. E. 801); *United States Casualty Co.* v. *Matthews,* 35 *Ga. App.* 526 (133 S. E. 875); *Maryland Casualty Co.* v. *England,* 160 *Ga.* 810, 812 (129 S. E. 75).

3. The finding of the commissioner before whom the case was originally tried, that the claimant was not entitled to compensation on account of her admission "that she had voluntarily left her husband," was a conclusion of law, based upon her own testimony. The finding of the full commission on appeal, affirming the award but adverse to the holding of the commissioner upon the effect of claimant's testimony, amounts to an adjudication by the commission that the claimant had made out a prima facie case by showing that her separation was not voluntary, but was brought about by the dereliction and misconduct of the husband. The judgment of the superior court, holding in effect that the case thus made by the plaintiff was in no wise controverted by the testimony offered in rebuttal, is borne out by the evidence. This rebuttal testimony, in so far as it throws any real light upon the question in issue, tends to sustain rather than to controvert the testimony of the claimant.

DECIDED JULY 20, 1926.

---

Workmen's Compensation Acts, C. J. p. 59, n. 60, 61; p. 122, n. 40.

Appeal; from Wilkinson superior court—Judge Park. December 15, 1925.

*Ralph G. Sims,* for plaintiffs in error.

*Allen & Pottle,* contra.

JENKINS, P. J.    There was no dispute that the death of plaintiff's husband arose out of and in the course of his employment, the only point of contest being as to whether the wife had lost her right to recover by reason of having voluntarily deserted him. The claimant testified that she was the widow of the deceased employee; that she married him on June 7, 1912, and lived at Gordon's Mill in Wilkinson County; that later she and her husband moved to his father's residence in Wilkinson County; that they did not live there long, but later moved back to her father's home in Macon, Ga.; that she and her husband thereafter moved to McIntyre, Ga., and then back to her husband's father's place; that they did not live in her father-in-law's home, but lived in a tenant-house which had been shortly before occupied by colored people; that she was not living with her husband at the time of his death; that she had been separated from him a little more than three years; that she left her husband for three good reasons, to wit, cruel treatment, habitual drunkenness, and non-support; that her husband repeatedly threatened to do her violence, and on more than one occasion he actually did do her physical violence by beating her; that he was guilty of staying away from home all night and all day on many occasions; that he was under the influence of liquor at various times, and when under the influence of liquor he was very rough, wanting to tear things up, and kill and whip; and that her husband failed to furnish her with the necessities of life. A first cousin of the decedent testified that he knew the decedent well; that he was his cousin; that he saw him nearly every day; that he did not know decedent's habit as to drinking whisky, because he did not follow him much; that they said he drank a good deal; that he had that reputation; that he could not say that he ever saw him under the influence of whisky; that he thought he was, but did not personally know it; that he could not tell as to his conduct while drinking, because he did not see him drunk to know it; that he never saw him take a drink; that he did not see him stagger; that he boarded with them a while; that he did not know definitely why she left him; that she never stated her reason for leaving; that

while he stayed there he never saw him come in and beat her; that he did not know anything about his not supporting her; that he did not stay there but a week, which was some time after they married; that if they had been fighting he would not have stayed that long; that he never heard him using violent language just before they separated; that before he stayed there he stayed at home, about a mile away; that he stayed at home about two years; that during the time he stayed at home he never heard of him being drunk and beating his wife; that he guessed he provided for her the best he could; that he knew nothing to cause her to leave him; that he knew nothing of her leaving him on account of his being drunk or rough, or for beating her, or for non-support. The father of the decedent testified that plaintiff left his son; that witness lived about a mile from them; that he had been in their home; that he never knew of his son treating his wife cruelly; that he did not know of his son drinking to amount to anything, "you know how boys are, they will take a drink once in a while;" that this is the first time he ever heard of his wife complaining that her husband beat her; that he thought it could be proved by a number of people that he did support her; he did support her; she left him because she wanted to go away and live; that his son said he carried her to McIntyre and gave her some money; that he had never supported her since; that he thought he had seen his son take a drink; that he did not know that he had seen him under the influence of whisky; that he did not think his son's wife was much help to her husband; that he did not know that he had ever heard his son complain. A brother of the decedent testified that he saw a letter from the claimant to the decedent, in which she went on to say, "as far as I am concerned you are a free man, I am leaving and wish you well," that she did not say anything about his not supporting her; that he was at decedent's house two or three times a week; that he never saw him come home drunk; that he never saw him beat his wife; that he never heard her making any complaint about it before to-day; that he had a plenty of ordinary food about his house; that he did not know what kind of a wife she made him; that they seemed to be happy; that they had their ups and downs, that he did not know why she left him; that he never heard the decedent say; that decedent took a drink once in a while, that he had seen him take sev-

eral; that he took it with him; that he had seen him slightly under the influence of whisky.

The commissioner found in favor of the defendant, basing his judgment on "the admission of Mrs. Council that she had voluntarily left her husband." On a review of the case by the full commission on the evidence had before the single commissioner, the full commission concluded its finding as follows: "We do not agree with Commissioner Kilburn in his statement that the claimant admitted she voluntarily abandoned her husband, but in light of the testimony as a whole, the sole commissioner having had the opportunity of hearing · the witnesses testify, having seen their demeanor on the stand and their manner of testifying, we are unwilling to reverse the award made by him; and the award of Commissioner Kilburn is therefore affirmed." On appeal this judgment of the full commission was reversed by the judge of the superior court.

*Judgment affirmed. Stephens and Bell, JJ., concur.*