19733. SPRAYBERRY v. INDEPENDENCE INDEMNITY COMPANY et al.

134

*Stella Akin, Oliver C. Hancock, T. G. Lewis,* for plaintiff.
*Connerat & Hunter,* for defendants.

STEPHENS, J.   Mrs. Birdie Sprayberry filed with the industrial commission a claim for compensation against General Oglethorpe Hotel Company as the employer, and Independence Indemnity Company as the insurance carrier.   The industrial commission found against the claimant.   This judgment was, on appeal to the superior court, affirmed.   The sole issue presented for determination is whether the accident upon which the claim was predicated arose out of and in the course of the claimant's employment.   It is undisputed that Mrs. Sprayberry was the housekeeper of the hotel, and lived in the hotel, occupying a room on the first floor; that on the evening of December 13, 1927, she was injured by a fall from the elevator in the hotel, which she had entered with the intention of returning to her room after a visit to a guest of the hotel.   Mrs. Sprayberry testified that she was the housekeeper of the hotel, that her duties as such consisted in looking after the guests and the rooms of the hotel, and, in answering complaints from the guests, that she lived in the hotel and was required to be there day and night, that she received for her services $100 per month, including her room and board, which amounted to $150, that about nine o'clock on the night of the accident, in response to a call to come to the room of one of the guests of the hotel, she

went to the room to "see about" something which the guest had spilt upon the carpet in the room, and in going to the room she used the service elevator of the hotel, that she attended to the matter with respect to the carpet in the room of the guest, that this required about ten minutes, and she then proceeded to return to her room on the floor below by using the same elevator, and, while attempting to leave the elevator, after it had become stuck between the floors, she fell, and received the injury for which she claimed compensation.

The claimant contends that, when the accident happened, she was about the business of her employment as housekeeper for the hotel and in the discharge of her duties as such, and that therefore the accident arose out of and in the course of her employment. The hotel company and the insurance carrier, on the other hand, contend that the claimant, while in the elevator at the time of the accident, was not in the discharge of her duties as housekeeper for the hotel, but was acting outside of and beyond her duties as such. They contend that her presence in the guest rooms of the hotel was not for the purpose of attending upon any duty incident to her employment as housekeeper of the hotel, but that she was in the rooms in company with another woman and two male guests of the hotel in attendance on a party where intoxicating liquors were being served, that she had therefore abandoned the duties of her employment and was on a mission purely personal to herself, and that, in leaving the party and in proceeding to the elevator, she was proceeding to her room for the purpose of getting her hat and thereby making preparation for a contemplated ride with one of the guests of the hotel who had been in attendance on this liquor party, and who was in the elevator with her, and that she, at the time of the accident, was still disassociated from the duties of her employment and was still on a mission purely personal to herself.

Mrs. Sprayberry further testified, that on the occasion of her visit to the room in the hotel to which she claims she had been summoned on a matter respecting her duties as housekeeper, no liquor was served, and that she had not drunk any liquor that night, that she had no engagement to go to ride with any one, and was not returning to her room to make preparations for that purpose. A bell boy of the hotel, who was introduced as a witness by the hotel and the insurance carrier, testified that, on the evening upon which Mrs. Sprayberry was injured, he responded to two

calls from the room of the guest of the hotel to which Mrs. Sprayberry claims she had gone in the discharge of her duties, that he responded to the first call about nine o'clock, and to the second call about a half-hour later, that on each occasion he found this guest and Mrs. Sprayberry and a man and a woman in the room, that he took cracked ice and ginger ale to the room, and whisky was being served there, and that the other woman in the room was the wife of the manager of the hotel and her position was that of "hostess" of the hotel. The witness testified that he served these people in two different rooms, one of the rooms being that of the woman in the party whom he designated as the wife of the manager of the hotel. He testified also that the people he served were the only guests in the hotel at the time. The physician who examined Mrs. Sprayberry immediately after her injury testified that he did not recall detecting any odor of alcohol about her person. Mr. F. L. Shotwell, who at the time was the assistant manager of the hotel, testified that he saw Mrs. Sprayberry immediately after the accident, and that he detected the odor of alcohol about Mrs. Sprayberry's person, but "not necessarily on her breath." He testified also to a statement made by the guest of the hotel whose room, Mrs. Sprayberry stated, she visited that night, that "we had a few drinks, probably five or six." He testified also that Mrs. Sprayberry stated to him that she had accepted the guest's invitation to ride, and that she was going to her room to get her hat and coat and expected to get them and go out. He further testified as follows: that on December 13 he was assistant manager of General Oglethorpe Hotel, that on the evening of that day Mrs. Sprayberry, the claimant, fell from what is called the "100th floor, to the pit of the elevator-shaft, the 100th floor being one floor above the lobby floor, or ground floor," and that he found her on the basement floor "apparently suffering great pain, moaning and shrieking," that Mrs. Sprayberry's employment was that of "housekeeper," that Mrs. Sprayberry was using the service elevator which is the elevator used, as he stated, by "waiters, chambermaids, housekeeper, and other employees, going up and down stairs." . . He testified also as follows: "There is an operator on the service elevator, but that is only during the daytime; I am not sure just when he finished at night, but it was the privilege and duty of the housekeeper to be able to operate the elevator, because she may have to use it herself

during the other hours, and it was her privilege to use that elevator, going up and down stairs. ·She takes a good many trips up and down during the day and is not expected to walk, and she could use the elevator; if there was no operator she could use it herself." He stated that Mrs. Sprayberry's salary was $100 per month, including a room and meals.

Did the evidence authorize the industrial commission to conclude that Mrs. Sprayberry at the time of the accident was not in and about the duties of a housekeeper for which she was employed? Other than the evidence of·Mrs. Sprayberry to the effect that her duties were to look after the guests of the hotel and the rooms, and to answer complaints from guests, there is no evidence of what her duties as housekeeper consisted. Counsel for the hotel and the insurance carrier concede that, if the facts are as testified to by Mrs. Sprayberry, her injuries arose out of and in the course of her employment, and she would be entitled to compensation. They insist that, in view of testimony by way of impeachment of Mrs. Sprayberry's testimony, her testimony should be wholly disregarded. Eliminating Mrs. Sprayberry's testimony from consideration, there remains, as respects the question at issue, only the testimony of Mr. Shotwell, the assistant manager of the hotel, and of the negro bell-boy. The testimony of these two witnesses, when considered without reference to the testimony of Mrs. Sprayberry, and therefore taken as uncontradicted and undisputed, makes the following case: Mrs. Sprayberry was the housekeeper of the hotel, living in the hotel and occupying a room there, and she, in the early part of the evening, between nine and eleven o'clock, was, in company with the wife of the manager of the hotel, and with two men who were guests of the hotel, in a guest-room of the hotel which was occupied by one of the men as a guest, and in another room of the hotel which was the room occupied by the other woman, that these were the only guests of the hotel that night; that while Mrs. Sprayberry was there, intoxicating liquors were being served, that it does not appear that Mrs. Sprayberry partook of any of the refreshments that were being served, but, if so, it does not appear that she became intoxicated or in any wise was under the influence of intoxicating liquor; that after remaining in these rooms for· about two hours, Mrs. Sprayberry accepted an invitation from one of the gentleman guests in her party to take a ride with him, and

that she and this guest entered the service elevator of the hotel, which she, when in the discharge of her duties as housekeeper for the hotel, was permitted to use at all times when going from one floor to another in the discharge of her duties, and to operate herself, in the absence of the operator; that she was going to her room with the intention of getting her coat and hat and taking a ride with one of the men who had been with her on the party; that her intention in going to her room was never executed, but was defeated by the accident which befell her after she and her companion had entered the elevator and it had proceeded toward the floor upon which she expected to alight.

We assume that the burden rests upon Mrs. Sprayberry to show that the injury which she received by her fall from the elevator arose out of and in the course of her employment. Her duties as housekeeper are not defined except by her in her own testimony, where she stated that they consisted in "looking after the guests and the rooms of the hotel, and in answering complaints from the guests," but, from the very nature of the employment and the fact that she lived in the hotel and occupied a room therein, her duties necessarily required her at some time, either in the day or at night, to go to the guest-rooms in the hotel. Guest-rooms in a hotel necessarily require, either directly, or indirectly through servants, the attention of the housekeeper. A housekeeper of a hotel, who lives in the building and who occupies a room therein, and whose duties require her to give attention to the rooms occupied by the guests, is, where it does not otherwise appear, presumably in the discharge of her duties as housekeeper while in a guest's room or traveling in the hallways, or riding in an elevator which, in the discharge of her duties, she is permitted to use.

Whether, during the entire time Mrs. Sprayberry was in the rooms of the guests of the hotel, she had abandoned her employer's business and had absolved herself from her duties as housekeeper, she certainly, after leaving the room and entering the halls of the hotel and the elevator on the return journey to her own room, had abandoned the enterprise in which she was engaged while in the guest-rooms. She must have either resumed her status as an employee of the hotel on duty, or as one off duty but on the employer's premises where her duties were to be performed, proceeding by the only available route to resume her duties. She undertook to

return to her own room by way of the service elevator, which, under the undisputed testimony of Mr. Shotwell, the assistant manager of the hotel, she was permitted to use and operate even in the nighttime when in the discharge of her duties. It has been repeatedly held that an employee who has temporarily abandoned the employer's business and gone off on business of his own is, when legitimately returning to work and re-entering the employer's premises by a route for that purpose, still in the discharge of his duties, and an injury received by him when thus returning to work arises out of and in the course of his employment. In Moore v. Manchester Liners Ltd., 100 L. T. 164, it was held, by the Court of Appeal of England, that, where a fireman, who was employed on board a ship anchored near the shore, was injured by a fall from a ladder on the side of the ship which he was climbing when returning to the ship, after having gone upon shore for the purpose of obtaining certain necessaries for himself which were not provided on the ship, and where during his absence he visited a drinking saloon, but did not take a drink, the injury arose out of and in the course of his employment. The judgment in that case was affirmed by the House of Lords. See 3 B. W. C. C. 527. In Leach v. Oakley Street & Co., 4 B. W. C. C. 91, it was held that where a seaman, in returning to his ship from a leave on shore, where he had gone for a purpose of his own, fell from the gangway into the water and was drowned, the injury arose out of and in the course of his employment. See other citations to the same effect in 1 Honnold on Workmen's Compensation, 451. In *Integrity Mutual Casualty Co.* v. *Jones, 33 Ga. App.* 489 (126 S. E. 876), it was held that "a laborer who is employed to assist in hauling logs upon an automobile from a swamp to his employer's sawmill located elsewhere, and who is permitted by his employer to ride upon the truck when going to the mill from the swamp for the purpose of bringing back logs, is in the discharge of his duties when so riding upon the truck; and where injured by falling from the truck, his injury arises out of and in the course of his employment."

The fact that Mrs. Sprayberry, in returning to her room, may have had an intention, after arriving there, to get her coat and hat and leave the hotel for the purpose of going on an automobile ride and thereby disassociate herself from her duties as housekeeper of the hotel, certainly can not operate to deprive her, when in the

elevator returning to her room, of her status of housekeeper of the hotel in and about her duties as such. Her intention while in the elevator and when the accident occurred, to temporarily lay off from her duties after arriving at her room, no more affects her status as respects her employment at the time of the accident than could her intention while in the elevator of writing out and tendering her resignation as housekeeper after her arrival at her room. In Pigeon *v.* Employers' Liability Ins. Co., 216 Mass. 51 (102 N. E. 932, Ann. Cas. 1915A. 737), it was held that, where a servant was killed by a runaway horse, which, in the performance of his duties, he was taking to water, the injury arose out of the employment, although the servant at the time had formed the intention to afterwards take the horse off on a mission of his own outside of the duties for which he was employed.

Remove the alcohol from the bottles which were in the rooms where Mrs. Sprayberry visited, and thereby banish from this case the influence of the spirit of Bacchus which hovers over it, and we have, under the theory of the case contended for by the hotel company and the insurance carrier, the housekeeper leaving her room in the hotel while on duty as housekeeper, and proceeding to other guest-rooms in the hotel, one of which is the room of the wife of the manager of the hotel, and in these rooms attending, in company with the manager's wife and two gentleman guests of the hotel, a social function where legitimate and non-intoxicating liquors are served. She goes to the rooms for the purpose of attending this function and remains there for about two hours in enjoyment of this entertainment, and then proceeds to return to her room by the elevator which in the performance of her duties as housekeeper she is permitted to use, and at the time intends to make preparations, after arriving at her room, to leave the hotel in acceptance of an invitation for a ride with one of the gentlemen present in the rooms where she has been visiting. If these circumstances authorize a finding that the housekeeper, by reason of her having attended as a guest the social functions in the rooms where she had been visiting, was not on duty as housekeeper when in the elevator returning to her room, and, therefore, that when injured from the operation of the elevator her injury did not arise out of and in the course of her employment as housekeeper and she was not entitled to compensation under the workmen's compen-

sation act, then no housekeeper of a hotel whose duties necessarily require her to live in the hotel and to go over the building from time to time and visit the guest-rooms of the hotel would be on duty while returning to her room in the hotel after having paid a social call to a guest occupying a room in the hotel.

The undisputed evidence demands the inference that the injuries which Mrs. Sprayberry received as the result of her fall from the elevator arose out of and in the course of her employment as housekeeper for the hotel. The undisputed evidence establishes the character of her injuries and the amount of salary and wages which she had earned. The industrial commission erred in holding that the injuries received by Mrs. Sprayberry did not arise out of and in the course of her employment, and the judge of the superior court erred in affirming this judgment on appeal brought by the claimant.

In the foregoing Judge Bell concurs, but Presiding Judge Jenkins dissents. Speaking further and for myself only, without the concurrence of either Presiding Judge Jenkins or Judge Bell, I add the following by way of special concurrence in the judgment of reversal: There is nothing in the evidence which, in my opinion, is sufficient to authorize an inference that Mrs. Sprayberry, between the time of leaving her own room in the hotel and the time of attempting to return thereto in the elevator, was not engaged in and about the duties for which she was employed as housekeeper of the hotel. Although, as has been concluded by the majority of the court, notwithstanding Mrs. Sprayberry while in the guest-room of the hotel may have abandoned the duties for which she was employed as housekeeper of the hotel, she had nevertheless, while in the elevator returning to her own room, resumed her status as the housekeeper of the hotel, there yet might be some justification for the conclusion that her status as one who had abandoned her employment while in the guest-rooms of the hotel continued to the time of her accident in the elevator. It would therefore seem that the conclusion arrived at by the majority of the court, viz., that Mrs. Sprayberry at the time of the accident was engaged in and about the duties of her employment, would be fortified by the fact that while in the guest-rooms of the hotel she had not abandoned the duties for which she was employed.

Neither of the three companions who were with Mrs. Sprayberry in the rooms in the hotel was introduced as a witness. With the exception of what can be learned from Mrs. Sprayberry and the bell-boy, there is no evidence of any probative value as to Mrs. Sprayberry's conduct from the time she left her room in the hotel until she was hurt in the elevator. There is nothing in the evidence, other than the fact that Mrs. Sprayberry was present in a room in the hotel in company with the manager's wife and two gentleman guests where intoxicating liquors were being served, which could authorize an inference that Mrs. Sprayberry, during her presence in the room while these festivities were going on, was not still on duty as housekeeper of the hotel, and was not there in the discharge of her duties as housekeeper. Since the duties of a housekeeper of a hotel may require her presence in the discharge of her duty in a guest-room of the hotel at any time, the mere fact that she is present in a guest-room of the hotel while festivities are going on there, in which she participates, does not of itself, without more, take her without the scope of her duties as housekeeper and render her status, while in the room participating in the festivities, that of an employee who has abandoned her employer's business. Had she, while on duty as housekeeper, gone to the guest's room in response to an invitation to partake of refreshments being served there, and partaken of refreshments after arriving there, she certainly could do so consistently with the discharge of her duties as housekeeper of the hotel. While in the rooms she could still be on duty as housekeeper, ready to respond on call, or at her own instance, to any household need to which her attention as housekeeper might be required. While in the room for any purpose she could still, in her capacity as housekeeper, be of service to the guests there. As housekeeper she possibly could be of service to the guests in assisting in the promotion of the success of the festivities. Had she been rendering assistance to the guests in promoting festivities where intoxicating liquors were being served, her conduct in this respect would be no more inconsistent with and beyond the scope of her duties as housekeeper of the hotel than would that of the bell-boy, in carrying ice water and ginger ale to the rooms for the same purpose, be inconsistent with his status of an employee of the hotel in the discharge of his duties. Had he, while going to or returning from the rooms, been injured in the same elevator as

was Mrs. Sprayberry, would it be held that, by reason of his mission in carrying supplies for the promotion of the drinking of intoxicating liquors, his injury did not arise out of and in the course of his employment?

There is no evidence to authorize the inference that Mrs. Sprayberry went to these rooms in the hotel for the purpose of attending this party or for the purpose of doing anything other than attending to her duties as housekeeper. She herself testified that her presence there was in response to a request from the guest inviting her to come to the room on a matter which was clearly within the scope of her duties as housekeeper. With her testimony eliminated from the case, the only inference from the evidence in this respect is solely that she was in the rooms. There is no evidence as to her motive or intention in going to these rooms. The only evidence which could connect her in any way with the liquor being served in the rooms is the testimony of the bell-boy as to her presence there while liquor was being served, and the testimony of Mr. Shotwell that he smelled liquor on her person after she was injured, but did not smell any on her breath. Mrs. Sprayberry denied that she had drunk any liquor. Assuming that she did and that the evidence was sufficient to authorize the industrial commission so to find, Mrs. Sprayberry's conduct in going to the rooms for the purpose of indulging in intoxicating liquors, and in partaking of the liquors after arriving there, if she did either, would not by reason of the intoxicating character of the liquor operate to deprive her of her status, which she otherwise had, of the housekeeper of the hotel on duty at the time. The situation is the same as if the liquor was non-intoxicating, or only food was served in the rooms. The test is whether her conduct was such as to deprive her while in the rooms of her status as housekeeper of the hotel. If going to the rooms for the purpose of drinking non-intoxicating liquors, or to obtain food, and there partaking thereof would not of itself alter her status as an employee of the hotel, certainly the fact that the liquor which she intended to consume on her arrival there and which she did consume while remaining there for that purpose was in fact intoxicating would not alone alter the case and operate to deprive her of her status as the housekeeper of the hotel, and on duty as such while present in the rooms, or while leaving them to return to her own room in the hotel. If, while she was in the

rooms, her conduct with respect to the liquor could be considered as in violation of law its criminal character certainly could not effect a denial of what otherwise is a fact that she was at the time on duty as the housekeeper of the hotel.

In Salle v. N. Y., N. H. & H. R. R., 4 N. Y. St. Dep. Rep. 393, it was held that where a railroad trackman was run down by a train, while standing on the track taking a drink, with his back to the train, the accident arose out of the employment. In Carini v. Nickel Plate R. R. Co., 4 N. Y. St. Dep. Rep. 423, it was held that where a laborer on a railroad culvert was injured while crossing the track to go to dinner in a nearby bunk car belonging to the railroad company, the accident arose out of the employment. In Leonard v. Freemont Hotel, 2 Cal. I. A. C. Dec. 998, it was held that where a housekeeper of a hotel, in which she resided, whose services as such were available at all hours, was injured while going to another part of the hotel for the purpose of obtaining hot water for her personal use, the injury arose out of her employment. In North Carolina R. Co. v. Zachary, 232 U. S. 248′ (34 Sup. Ct. 305, 58 L. ed. 591, Ann. Cas. 1914C, 159), it was held by the Supreme Court of the United States that "although absent temporarily from his train for a short time for a purpose not inconsistent with his duty to his employer, a railroad employe may still be on duty and engaged in interstate commerce within the meaning of the Employers' Liability Act of 1908." On page 260 the court says "it is said that because deceased had left his engine and was going to his boarding-house, he was engaged upon a personal errand, and not upon the carrier's business. Assuming (what is not clear) that the evidence fairly tended to indicate the boarding-house as his destination, it nevertheless also appears that deceased was shortly to depart upon his run, having just prepared his engine for the purpose, and that he had not gone beyond the limits of the railroad yard when he was struck. There is nothing to indicate that this brief visit to the boarding-house was at all out of the ordinary, or was inconsistent with his duty to his employer. It seems to us clear that the man was still 'on duty' and employed in commerce, notwithstanding his temporary absence from the locomotive engine." In Employers Liability Assurance Co. v. Henderson, 37 Ga. App. 238 (139 S. E. 688), it is held that "a city policeman, whose duty it is to patrol a beat and to perform police duties in the city,

which duties he performs during a specified number of hours, may still be on duty and in the performance of his duties during that period of time while in his own home, where he has gone for the purpose of eating supper, intending to return afterwards to his beat." In *New Amsterdam Casualty Co.* v. *Sumrell*, 30 *Ga. App.* 682 (118 S. E. 786), it is held that "an injury arises 'in the course of employment,' within the meaning of the workmen's compensation act, when it occurs within the period of the employment, at a place where the employee reasonably may be in the performance of his duties, and while he is fulfilling those duties or engaged in doing something incidental thereto. An accident arises 'out of' the employment when it arises because of it, as when the employment is a contributing proximate cause. This and the condition stated above must concur before the act can apply."

Mrs. Sprayberry, while living in the hotel and while on duty as housekeeper could, consistently with those duties and without depriving her of her status as housekeeper of the hotel, entertain guests of her own in her own room. The case therefore should be determined without reference to the fact that Mrs. Sprayberry was in a room in the hotel other than her own, but should be determined by the same standard respecting her conduct as would be applied to her if the entertainment which she was attending had been conducted in her own room. Applying this standard, Mrs. Sprayberry certainly was on duty as housekeeper of the hotel during the time she was in attendance on the party in the guest rooms of the hotel, and at the time of her injury when returning therefrom in the elevator.

*Judgment reversed. Bell, J., concurs. Jenkins, P. J., dissents.*

JENKINS, P. J., dissenting. The question in this case, as I see it, is whether the finding of the industrial commission that the injury to the claimant did not arise out of and in the course of her employment is absolutely without evidence to support it, for the reason that all of the undisputed testimony demands the inference that the injuries did in fact arise out of and during the course of her employment. It is well settled by any number of adjudications, both by the Supreme Court and by this court, that the findings of the industrial commission on questions of fact are absolutely binding upon both the superior court and this court, unless the finding is contrary to all of the evidence and without any evidence

146

to support it. *Ocean Accident & Guaranty Corp.* v. *Council,* 35 *Ga. App.* 632 (2) (134 S. E. 331). As I view the evidence, the the commission was authorized to find that the claimant was not engaged in the business of her employment at the time the injury occurred. This court is, therefore, without power to set aside the judgment of the superior court upholding the finding of the industrial commission. This conclusion is arrived at irrespective of any question of whether, under the facts set forth in the majority opinion, intoxicating liquors may or may not have been consumed at the party which, there was evidence to show, was attended by the claimant, and irrespective of whether the claimant may or may not have participated in their consumption. My own conclusion is arrived at solely from the fact that I think that from the evidence, which was in many respects in conflict, the commission was authorized to find that the injury did not arise out of and during the course of the employment, and that it occurred at a time when the plaintiff was leaving the party, upon which, according to some of the testimony, she had been in attendance for about two hours, for the purpose of returning to her room to get her hat, in order to take an automobile ride, and that neither of these enterprises, however harmless her conduct might have been, was in any wise connected with the business of her employment.